CITY OF MIDDLEBURG HEIGHTS, Appellee,

v.

D'ETTORRE, Appellant.

[Cite as *Middleburg Hts. v. D'Ettorre* (2000), 138 Ohio App.3d 700.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76512.

Decided July 31, 2000.

*Peter H. Hull,* for appellee.

*David G. Phillips,* for appellant.

---

JAMES M. PORTER, Judge.

Defendant-appellant Dominic D'Ettorre appeals from his convictions in Berea Municipal Court following a jury trial for driving while under the influence of alcohol (R.C. 4511.19(A)(1)), operating a motor vehicle without a valid license (R.C. 4507.02(A)(1)), operating a motor vehicle while driver's license is under suspension for failing to pay reinstatement fee (R.C. 4507.02(C)), and for failing to control a motor vehicle (R.C. 4511.202). Defendant maintains that the trial court should have granted motions to acquit and to suppress incriminating evidence and further erred in not excluding certain documentary evidence. We find this appeal has merit in part and remand for resentencing.

Middleburg Heights Police Officer Ryan Nagy testified that on January 14, 1999, at about 8:50 p.m., he received a radio call that a vehicle had slid off the road surface at the intersection of Pearl Road and the Interstate 71 exit ramp. While on his way to the accident location, Nagy observed two males walking north on Pearl Road a short distance from the accident. Nagy located the vehicle about fifteen feet from the berm in the snow with the trunk perpendicular to the road. After determining no one was in the car, the officer drove back in the direction of the two men he saw walking away from the accident site. The two men were inside a Shell gas station less than one quarter of a mile from the accident site. The defendant was exiting the gas station door at the same time Nagy drove up.

Nagy asked the defendant if the car that had driven off the road belonged to him and was he driving it. The defendant answered yes. The defendant told the officer that the car had slid off the road. The defendant had a strong odor of alcohol on his breath and was swaying as he talked. His eyes appeared glassy and his speech was slurred. He had trouble understanding the conversation. Nagy administered a horizontal gaze nystagmus test, the results of which indicated intoxication. The defendant told Nagy that he had consumed a few beers. After Nagy conducted the eye test, the defendant said he was not the driver. Nagy asked the passenger if he drove the car off the road. The passenger stated that he had not. When the officer asked the defendant who had driven the car, defendant could only respond, "someone else," who had "run away." Nagy reached the conclusion that the defendant was intoxicated while driving and arrested him.

Nagy, as he got back in the squad car to take the defendant to the station, received information on the computer that indicated that the defendant's license had been suspended for failure to pay a reinstatement fee.

At the police station, Nagy read the pertinent portions of OBMV Form 2255 that describe the legal consequences for failure to submit to a breath test. After hearing the legal consequences, the defendant refused to be tested for breath alcohol content. During his processing, the defendant was crying. At one point he stood up and "acted like he was going to unzip his pants and urinate on the table."

Based on the above evidence, the jury found defendant guilty on all counts. The trial court sentenced the defendant as follows: for driving under the influence of alcohol (R.C. 4511.19(A)(1)), the defendant was sentenced to 180 days in jail and a $500 fine, all but thirty days of his sentence were suspended. He was also placed on three years probation and his license was suspended for three years. For failure to control a vehicle (R.C. 4571.202), the defendant was fined $25 plus court costs. For operation of a motor vehicle without a valid licenses (R.C. 4507.02(A)(1)), he was fined $50.00 plus court costs. For operating a vehicle while license was suspended for failure to pay reinstatement fee (R.C. 4507.02(C)), the court fined him $50 plus court costs, but suspended the fine. This timely appeal ensued.

We will address defendant's assignments of error in the order presented.

I.

. "(A) The trial court erred in failing to grant appellant's motion for judgment of acquittal prior to the case being submitted to the jury because appellee failed to prove the essential elements of the offense that appellant was operating a motor vehicle under the influence of alcohol.

"(B) The trial court erred in failing to grant appellant's motion for judgment of acquittal after the jury's verdict because appellee failed to prove the essential elements of the offense that appellant was operating a motor vehicle under the influence of alcohol.

"(C) The trial court erred in failing to grant appellant's motion to suppress his arrest and evidence of the arrest because appellee failed to present evidence at the suppression hearing showing that (1) appellant was under the influence when the vehicle was operated and/or (2) that the arresting officer observed the indicia of intoxication of appellant to warrant probable cause for appellant's arrest for operating a motor vehicle under the influence of alcohol."

We find the foregoing assignment of error without merit. The state introduced sufficient evidence at trial to sustain the conviction for operating a motor vehicle while under the influence of alcohol. R.C. 4511.19(A)(1).

The standard of review we must observe in passing on sufficiency of the evidence was set forth by the Supreme Court of Ohio in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541, 546–547:

"The state asserts that sufficiency of the evidence and weight of the evidence are synonymous legal concepts. They are not. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.

"With respect to sufficiency of the evidence, ' "sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed.1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict, is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560."

Nagy testified to the incidents that took place on January 14, 1999. He received a radio assignment saying that a car slid off the road at Pearl Road and I–71. On his way to the scene, he saw two men walking away from the stranded car. He checked the car out and observed that it was unoccupied and off the road at the location identified by the dispatcher. The officer acknowledged that he asked the defendant a compound question, whether the car was his and whether he was driving it. Notwithstanding defendant's argument, whether defendant's response of "yes" went to both or just one of the questions was for the jury to determine. After the officer conducted eye coordination tests to determine if the defendant was intoxicated, he then told the officer "someone else" was driving the car. This may well have compromised his credibility in the eyes of the jury.

Further, the officer testified that defendant's breath smelled from the odor of an alcoholic beverage; his eyes were glassy; his speech was slurred; he told Nagy that he had had a few beers; and he failed a horizontal gaze nystagmus test, all of which led Nagy to form his opinion that the defendant was unfit to drive because he was impaired by alcohol.

The above evidence, if believed by the trier of fact, was sufficient to sustain the conviction of the defendant for driving under the influence.

Assignment of error I is overruled.

## II.

"(A) The trial court erred in failing to grant appellant's motion for judgment of acquittal prior to the case being submitted to the jury because appellee failed to prove the essential elements of the offense that a vehicle was operated without reasonable control and/or that appellant had operated a motor vehicle without using reasonable control.

"(B) The trial court erred in failing to grant appellant's motion for judgment of acquittal after the jury's verdict because appellee failed to prove the essential elements of the offense that a vehicle was operated without reasonable control and/or that appellant had operated a motor vehicle without using reasonable control.

"(C) The trial court erred in failing to grant appellant's motion to suppress his arrest and/or evidence of his arrest for failing to operate a motor vehicle with reasonable control because appellee failed to prove the essential elements of the offense that a vehicle was operated without reasonable control and/or that appellant had operated a motor vehicle without using reasonable control.

"(D) The trial court erred in failing to properly instruct the jury on the proper level of appellant's culpability for the alleged offense of violating R.C. 4511.202."

Defendant argues that there was insufficient evidence to show that defendant lost control of his vehicle that was found fifteen feet off the berm of the highway in a snow drift.

Failing to control a motor vehicle is codified in R.C. 4511.202, which states:

"No person shall operate a motor vehicle, trackless trolley, or streetcar on any street, highway, or property open to the public for vehicular traffic without being in reasonable control of the vehicle, trolley, or streetcar."

The officer testified that defendant answered "yes" when questioned about whether he was driving his car when it left the highway. The defendant also initially told the officer that the car slid off the road. Although defendant poses various speculative scenarios to detract from that evidence, there was sufficient evidence from which the jury could conclude that the defendant had violated R.C. 4511.202. Coupled with evidence that defendant had been drinking and that the car ended up fifteen feet off of the berm in a snow drift with its trunk facing perpendicular to the road, the state produced sufficient circumstantial evidence of a violation of the statute. As the court in *State v. Lunsford* (1997), 118 Ohio

App.3d 380, 692 N.E.2d 1078 held, in upholding a R.C. 4511.202 violation "[t]he operator of a motor vehicle is responsible for keeping his vehicle under control and on his side of the road. This is true irrespective of the condition of the road." *Lunsford*, at 383, 692 N.E.2d at 1080, citing *Oechsle v. Hart* [1967] 12 Ohio St.2d 29, 34, 41 O.O.2d 215, 218, 231 N.E.2d 306, 310.

Defendant has not cited any case law that would support a jury instruction requiring the jury to find that the defendant was reckless before finding him guilty of failure to control a motor vehicle under R.C. 4511.202. See *State v. Weitbrecht* (July 31, 1998), Holmes App. No. 97CA588, unreported, 1998 WL 518306 ("The specific language of these statutes [R.C. 4511.202; R.C. 4511.25(A); R.C. 4511.29; R.C. 4511.31] make them strict liability offenses therefore there was no need to prove a culpable mental state"). The statute itself only requires lack of "reasonable control." Accordingly, we find no error in the trial court's instructions to the jury on this issue.

Assignment of error II is overruled.

## III.

"(A) The trial court erred in permitting appellee to introduce exhibit 2–A and recall the arresting officer after appellant moved for judgment of acquittal to the prejudice of defendant because it constituted unfair surprise; such evidence should have been precluded under Crim.R. 16(E).

"(B) The trial court's error in permitting appellee to introduce exhibit 2–A and recall the arresting officer prejudiced the entire trial and deliberations against appellant, such evidence should have been precluded under Crim.R. 16(E).

"(C) The trial court erred in failing to grant appellant's motion for judgment of acquittal prior to the case being submitted to the jury because appellee failed to prove the essential elements of the offense that appellant was operating a motor vehicle without a valid driver's license.

"(D) The trial court erred in failing to grant appellant's motion for judgment of acquittal after the jury returned a verdict against appellant because appellee failed to prove the essential elements of the offense that appellant was operating a motor vehicle without a valid driver's license.

"(E) The trial court erred in sentencing appellant for violations of R.C. 4507.02(A)(1) and R.C. 4507.02(C) because such are allied offenses of similar import."

Defendant was issued a traffic citation for driving a motor vehicle while his Ohio license was suspended for failure to pay a reinstatement fee. R.C. 4507.02(C) states:

"No person, whose driver's or commercial driver's license, or permit has been suspended pursuant to section 4511.191 [4511.19.1], section 4511.196 [4511.19.6], or Division (B) of section 4507.16 of the Revised Code, shall operate any motor vehicle within this state until he has paid the license reinstatement fee * * *."

There were two entries in the official record of the Ohio Bureau of Motor Vehicles stating that the defendant had failed to pay reinstatement fees. In addition, the defendant's Ohio Bureau of Motor Vehicles record was in the court's file from the date of arraignment forward and was produced to the defendant's attorney in response to defendant's discovery motion. It was the subject of discussion between opposing counsel at several pretrials. There was never any question that the defendant was being charged with failure to pay the reinstatement fee.

Defendant's principal complaint seems to be that the uncertified "LEADS" computer printout was introduced into evidence over the defendant's objection in the prosecution's case-in-chief. At trial, after the prosecution rested, but before the defendant's case, the prosecutor faxed the uncertified copy to the Bureau of Motor Vehicles who, in turn, certified it and returned it by fax. The court allowed the prosecution to reopen the case to offer the certified copy into evidence and eventually substituted the certified copy for the uncertified copy.

 We note that it is well established that the trial court, in maintaining reasonable control over the mode and presentation of evidence, has wide discretion to permit evidence to be offered out of order. *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035, paragraph three of the syllabus. This includes the decision to allow a party to reopen its case to present additional proof. *Columbus v. Grant* (1981), 1 Ohio App.3d 96, 97, 1 OBR 399, 399–400, 439 N.E.2d 907, 908–909. Thus, a decision by the trial court to allow a party to reopen its case to offer additional evidence will be reversed only upon a showing of an abuse of discretion. *Id.* We find, however, that whether the trial court should have reopened the case to allow the introduction of the certified LEADS document is inconsequential as the evidence regarding the LEADS report prior to the reopening was sufficient in itself for authenticating the document.

This court in *Cleveland Metro. Park Dist. v. Schillinger* (Sept. 4, 1997), Cuyahoga App. No. 71512, unreported at 2, 1997 WL 547946 held:

"Schillinger argues the LEADS printout is insufficient evidence of his guilt as a matter of law. To support his argument, Schillinger claims the printout is inadmissible.

"This court resolved the admissibility of a LEADS printout in *State v. Cooper* (March 18, 1982), [Cuyahoga] App. No. 43765, unreported [1982 WL 5240]. In *State v. Cooper*, we held a LEADS printout is admissible as 'it contains only the

routine activities of a public agency relative to the ownership of a motor vehicle.' *Id.* Schillinger claims the holding in *Cooper* does not purport that a LEADS printout is *per se* admissible. However, it does establish that a LEADS printout is admissible as a public record under Evid.R. 803(8)(a). In this case, the prosecutor introduced the printout as a public record. The trial court in is discretion properly admitted it into evidence. The LEADS printout showed Schillinger was under suspension at the time of the offense.

"Schillinger argues the prosecutor failed to lay a foundation for the admissibility of the printout, citing *Columbus v. Wilburn* (Aug. 13, 1991), Franklin App. No. 91, AP 231, unreported [1991 WL 159870]. In *State v. Cooper*, we held that a police officer's testimony was sufficient to show authenticity of a LEADS printout under Evid.R. 901(B)(1) and (2). In this case, Ranger Walker identified and authenticated the printout. Consequently, the trial court properly admitted the printout under Evid.R. 803(8)(a) * * *."

Likewise, in the case herein, before the state closed its case, Nagy identified and authenticated the printout. He testified that the printout is brought up on a computer screen in the patrol car and that dispatch will print out a hard copy on request. Although he did not print out the LEADS document himself, Nagy did bring it up on the computer screen in his squad car and testified that the printout was the same document he brought up on his screen, except that the printout had a few more lines of information. He stated that all dispatchers and police officers have access to the LEADS computer terminal and that he was trained in how to retrieve the data. He also testified that the LEADS information is kept under the care, custody, and control of the police department collectively. Therefore, based on this evidence, the LEADS report was properly admitted.

Defendant was also cited for driving without a valid operator's license. R.C. 4507.02(A)(1) states:

"No person * * * shall operate any motor vehicle upon a highway * * * in this state unless the person has a valid driver's license * * *."

The LEADS printout clearly showed that the defendant did not have a valid operator's license when he drove his car into the snow bank. Therefore, he was properly convicted of driving without a valid operator's license.

In *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 549 N.E.2d 520, the Ohio Supreme Court set forth the test to determine if two offenses are allied offense of similar import. The court held:

"Under R.C. 2941.25, a two-tiered test must be undertaken to determine whether two or more crimes are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result

in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." *Id.* at syllabus.

The elements of the two offenses in the case herein are as follows. For driving without a valid driver's license, the elements pursuant to R.C. 4507.02(A)(1) are:

"No person * * * shall operate any motor vehicle upon a highway * * * in this state unless the person has a valid driver's license * * *."

The elements for operating a vehicle while driver's license is under suspension pursuant to R.C. 4507.02(C) are:

"No person, whose driver's or commercial driver's license or permit has been suspended pursuant to section 4511.191 [4511.19.1], section 4511.196 [4511.19.6], or division (B) of section 4507.16 of the Revised Code, shall operate any motor vehicle within this state until the person has paid the license reinstatement fee * * *."

■ A review of these elements indicates that if the defendant had paid the reinstatement fee, he would have had a valid license. He therefore would not have been charged with either offense. Clearly, these are allied offenses of similar import as the commission of one results in the commission of the other without a separate animus. Therefore, the trial court should have merged these two offenses at sentencing.

Defendant's assignment of error III is sustained in part and the matter remanded to the trial court for resentencing.

*Judgment affirmed*
*and remanded for resentencing.*

DYKE, A.J., concurs.

MICHAEL J. CORRIGAN, J., concurs in part and dissents in part.

MICHAEL J. CORRIGAN, J., concurring in part and dissenting in part.

I concur with the majority in its disposition of all matters and except for assignment of error III. I do not believe that driving without a valid driver's license, as set forth in R.C. 4507.02(A)(1), merges with operating a vehicle while one's driver's license is under suspension, pursuant to R.C. 4507.02(C). The former encompasses situations where an operator was never licensed or unli-

censed. The latter relates to a previously licensed operator whose privileges have been suspended and has failed to perfect reinstatement. The majority writes that had the reinstatement fee been paid and the suspension lifted, the appellant would be charged with neither offense. I do not disagree with the statement, but the fact is that the reinstatement fee was not paid and, therefore, the appellant was appropriately charged and convicted of both counts.

The sentencing entry of May 26, 1999, reflects that the appellant was fined $50 pursuant to R.C. 4507.02(A)(1). Although the defendant was fined $50 for the violation of R.C. 4507.02(C), the trial court immediately suspended that fine. Assuming arguendo that the counts merge for sentencing (although not specifically stated), the trial court sentenced only on the R.C. 4507.02(A)(1) infraction. Error, if any, is rendered harmless. No actual punishment having been imposed makes the remand a nullity. I would affirm in all regards.