[Cite as *State v. Miller*, 2025-Ohio-4519.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 24CA12 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| v. | : | |
| Jackie Lee Miller, | : | **RELEASED 9/22/2025** |
| Defendant-Appellant. | : | |

_____

<u>APPEARANCES</u>:

Karyn Justice, Esq., The Law Office of Karyn Justice, LLC, Portsmouth, Ohio, for appellant.

Brigham Anderson, Lawrence County Prosecuting Attorney, and Steven K. Nord, Assistant Lawrence County Prosecuting Attorney, Ironton, Ohio, for appellee.

_____

Hess, J.

{¶1}     Jackie Lee Miller appeals the judgment of the Lawrence County Court of Common Pleas convicting him, following a jury trial, of aggravated trafficking in drugs, a first-degree felony. Miller presents two assignments of error asserting that the trial court erred when it admitted other-acts evidence and when it allowed the State to reopen its case in chief to present new evidence of an element of the crime.

{¶2}     We find that the admission of evidence of other crimes, wrongs, or acts purportedly committed by Miller was harmless error because the State submitted overwhelming evidence of his guilt. We also find that the trial court did not abuse its discretion when it allowed the State to reopen its case to submit evidence of the distance

between the drug buy and the high school. We overrule his assignments of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

**{¶3}** In May 2023, a Lawrence County grand jury indicted Miller of one count of aggravated drug trafficking in methamphetamine in an amount equal to or exceeding 5 times the bulk amount but less than 50 times the bulk amount in the vicinity of a school in violation of R.C. 2925.03(A)(1)(C)(1)(d). Miller was eventually located and arrested in January 2024. He pleaded not guilty. During discovery, the State provided Miller's attorney with a two-hour audiotaped interview of Miller by law enforcement conducted shortly after his apprehension. Miller's attorney reviewed the audiotaped interview of Miller and, two days before trial, filed a motion in limine to prohibit the State from admitting any evidence of other crimes, wrongs, or acts or alleged misconduct involving criminal conduct not included in the indictment. He identified 32 statements by referencing the timestamps on the audio that he argued should be redacted under Evid.R. 404(B).

**{¶4}** Prior to the start of trial, the trial court addressed the motion in limine. The State informed the trial court that it had redacted many statements Miller had made that were not admissible under Evid.R. 404(B), which had reduced the 2-hour audiotape down to 39 minutes. However, the State also argued that there were statements Miller made that were directly relevant to the charges:

> I agree there's a lot of things in here [audiotaped interview] that that [sic] shouldn't come in. [Miller's counsel] is correct on that. But, you know, and one of the things he said, there's nothing in the last hour or so that – well, in in [sic] the last couple of minutes, last few minutes of the interview, Mr. Miller talks about how he knows who it was that got him; who the confidential informant was and everything. So, you know, again, there are relevant things like that that need to go forward with respect to - - .

The trial court interrupted to confirm that the name Miller identified as the confidential informant was the name of the confidential informant in the case. The trial court agreed that statements Miller made that are related to the charges in the case "are obviously in" but the trial court would prohibit other statements under Evid.R. 404(B). The trial court gave Miller's counsel time to review the newly redacted 39-minute audiotape and note any objections that he had with the redacted version. The State offered to review any new objections to determine if it could stipulate to additional redactions.

{¶5}  After Miller's counsel had an opportunity to review the redacted audiotape, the trial court reviewed each of the new objections Miller asserted. The trial court sustained some of Miller's objections and overruled some of them. The trial court went through the list of sustained objections and referenced the relevant timestamps to confirm that the individual who was making the redactions understood what each of the additional redactions were and where they were located on the recording. The State had no objections to the additional redactions ordered by the trial court. Additionally, the parties stipulated that the Ironton High School premises was owned by the Board of Education for Ironton Local Schools. The trial court instructed the State to put on evidence of the distance of the drug buy from the high school, "you put the evidence on that it is within 1000 feet of that." The parties also stipulated that the drug substance in question was 27.99 grams of methamphetamine, a Schedule II drug.

{¶6}  The State presented evidence of the controlled drug buy it conducted using a confidential informant. An investigator for the Lawrence County Drug and Major Crimes Task Force testified about the process used to set up a confidential informant for a controlled drug buy. The investigator testified that he set up a confidential informant with

a recording device to purchase an ounce of methamphetamine from Miller. The investigator could watch the recording in real time and see Miller's face in the video recording, which was the only person, other than the informant, in the video. After the controlled buy, law enforcement obtained a search warrant but was unable to locate Miller, his personal belongings, or the money used to make the drug purchase. Approximately ten months later, Miller was discovered by law enforcement in Kentucky. The investigator identified a still photograph taken from the video recording of the controlled drug buy and identified it as a photograph of the confidential informant's hand holding an ounce of methamphetamine and Miller's face in the background. The substance purchased from Miller was sent for a chemical analysis to the Ohio Bureau of Criminal Investigation and it was found to be 27.99 grams of methamphetamine.

{¶7} The confidential informant testified about his role in the controlled drug buy. The informant testified that he had known Miller for about 15 to 18 years and the informant made a deal with the investigator to make a drug buy of 1 ounce of methamphetamine from Miller in exchange for a $100 payment. The confidential informant placed a phone call to Miller to arrange the drug buy using the phone at the Ironton Police Department. The confidential informant testified that he purchased the methamphetamine from Miller as planned and videotaped the transaction. The confidential informant testified that another person was known to reside at the house where he purchased the drugs from Miller, but he never saw the other person during the entire transaction. On cross-examination, the confidential informant testified that he called Jackie Miller for drugs because, "I got drugs off Jackie, all the time." Miller's attorney did not object to this

testimony, which suggested that Miller had engaged in the sale of illegal drugs prior to this controlled drug buy.

{¶8}    The Ironton Police Chief testified about the controlled drug buy and testified that he observed the recorded phone call between the confidential informant and Miller to set up the controlled drug buy. The Chief also testified about the video recording of the drug buy and testified that he saw the bag of drugs in the confidential informant's hand and Miller sitting beside him holding the marked drug money. The video recording of the controlled drug buy was played for the jury. After Miller was located months later in Kentucky, the Chief and another investigator interviewed Miller and recorded that interview. The Chief testified that Miller waived his Miranda rights. The redacted audiotape was played for the jury.

{¶9}    While the audiotape was playing, Miller's attorney objected to a portion of it, explaining that the segment at timestamp 10:10 was supposed to have been redacted. There was a bench conference at which Miller's attorney stated that the segment that was supposed to be redacted was originally at 10:10, but during the replay that segment appeared at 7:43. The parties replayed the audiotape, and the trial court determined that the segment that had been played should have been redacted. That segment was redacted and the audiotape was played for the jury with the objectionable portion redacted.  Miller's attorney did not request a curative instruction, and none was given.

{¶10}   The State rested its case. Miller made a Crim.R. 29 motion to dismiss, which was denied. The State asked to reopen its case to put on evidence of the distance of the drug buy from the Ironton High School. Miller objected. The trial court overruled the objection and allowed the State to present evidence that showed that the controlled drug

buy occurred within 1000 feet of the high school. The defense rested its case without calling any witnesses. The jury found Miller guilty on the drug offense as charged and the trial court sentenced Miller to 8 to 12 years in prison.

## II. ASSIGNMENTS OF ERROR

**{¶11}** Miller presents the following assignments of error:

I. The trial court erred when it admitted evidence of other acts.

II. The trial court erred when it allowed the State to re-open its case in chief.

## III. LEGAL ANALYSIS

### A. Evidence of Other Crimes, Wrongs, or Acts.

**{¶12}** Miller contends that the trial court erred when it allowed evidence of other crimes, wrongs, or acts in violation of Evid.R. 404(B). The State argues that any error in the inadvertent admission of a segment of the audiotaped interview that described other acts was harmless because the State presented overwhelming evidence that Miller was the person in the controlled drug buy that sold the confidential informant 27.99 grams of methamphetamine.

### 1. Standard of Review

**{¶13}** Evid.R. 404(B) addresses the use of other-acts evidence and prohibits it to prove character:

> (B) Other Crimes, Wrongs or Acts.
> (1) *Prohibited Uses.* Evidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

The admissibility of other-acts evidence under Evid.R. 404(B) is a question of law that we review de novo. *State v. Hartman*, 2020-Ohio-4440, ¶ 22. Normally, we use a three-step

process to consider: (1) the relevancy of the evidence, (2) whether it is used to show conformity of character or whether it is presented for a legitimate purpose, and (3) whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *State v. Williams,* 2012-Ohio-5695, ¶ 19; *State v. Ludwick*, 2022-Ohio-2609, ¶ 17-18 (4th Dist.). Here, however, there is no dispute that the evidence admitted was in violation of Evid.R. 404(B) because the trial court had previously ruled it inadmissible. Thus, we start with the harmless error analysis.

## 2. Legal Analysis

**{¶14}** The trial court had previously ruled that the other-acts evidence in this instance was inadmissible and the segment in question was to be redacted. However, due to some confusion, it was left in and played for the jury. The State had not intended to use any prohibited other-acts evidence in its case, had performed its own redactions prior to submitting the audiotape, and did not object to the redaction of additional segments from the audiotaped interview. Therefore, the question before us is whether the error was prejudicial to Miller.

**{¶15}** When other-acts evidence is admitted, Crim.R. 52(A) requires us to determine whether this error was harmless. Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). " 'If a court determines that the error did not affect the defendant's substantial rights, then the error is harmless and shall be discarded.' " *Ludwick* at ¶ 37, quoting *State v. Morris* 2014-Ohio-5052, ¶ 23.

> First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Lastly, once the prejudicial evidence is excised, the remaining

evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt. (Citations omitted.)

*State v. Harris*, 2015-Ohio-166, ¶ 37; *Ludwick* at ¶ 38.

**{¶16}** We find that the prior-acts evidence here did not impact the jury verdict. The other-acts evidence was a short segment of an audiotaped interview that referenced other possible drug trafficking activity by Miller. However, during Miller's cross-examination of the confidential informant, the informant testified, "I got drugs off Jackie, all the time." Therefore, there was already evidence the jury heard of Miller's history of drug trafficking. The additional comments Miller made during the interview were redundant and did not impact the jury's verdict. Additionally, under the second and third prongs of the test, we are persuaded beyond a reasonable doubt that the error was harmless because the remaining evidence established Miller's guilt beyond a reasonable doubt. The investigator and the confidential informant testified that Miller sold the 27.99 grams of methamphetamine to the informant. The videotape of the controlled drug buy and the still photograph from it showed Miller's face clearly. Miller was sitting on the couch next to the confidential informant, who had the drugs in his hand and Miller had cash in his hand. The entire audiotaped interview of Miller following his apprehension in Kentucky could have been excluded and the State's remaining evidence would have overwhelmingly established Miller's guilt.

**{¶17}** We overrule Miller's first assignment of error.

### B. Reopening the State's Case in Chief

**{¶18}** Miller contends that the trial court abused its discretion when it allowed the State to reopen its case in chief to introduce evidence of the distance between the drug buy and the high school. The State argues that it made a mistake and inadvertently

omitted that evidence. The State contends that relevant legal authority gives the trial court discretion to reopen the case to allow a party to submit additional evidence.

### 1. Standard of Review

**{¶19}** We review a trial court's decision to permit a party to reopen its case at a later stage in the trial for abuse of discretion. *State v. Fizer*, 2002-Ohio 6807, ¶ 34 (4th Dist.). " '[A]buse of discretion' [means] an 'unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken.' " *Matter of Millhouse,* 2024-Ohio-1187, ¶ 5 (4th Dist.), quoting *State v. Kirkland*, 2014-Ohio-1966, ¶ 67.

### 2. Legal Analysis

**{¶20}** Under Evid.R. 611(A), a trial court exercises reasonable control over the mode and order of presenting evidence to make the presentation effective for the ascertainment of the truth. It is within the trial court's discretion to allow a party to re-open the case to present additional evidence. *City of Columbus v. Grant*, 1 Ohio App.3d 96 (10th Dist. 1981) (the trial court did not abuse its discretion when it allowed the city to reopen its case to allow a witness to identify the defendant after the city rested and after the defense rested and moved for a judgment of acquittal on the grounds that the city's witness had not specifically identified the defendant as the woman about whom he had testified); *State v. Grundstein*, 69 N.E.2d 418 (2d Dist. 1943) (the trial court did not abuse its discretion when it permitted the prosecution to reopen its case following closing arguments to the jury). A trial court retains discretion to permit the State to reopen its case to supply an omission, even after the defense makes a motion for an acquittal under Crim.R. 29. *State v. Fizer*, 2002-Ohio-6807, ¶ 34 (4th Dist.); *Middleburg Hts. v. D'Ettorre*,

138 Ohio App.3d 700 (8th Dist. 2000); *State v. Bumpus*, 1998 WL 771397 (2d Dist. Oct. 2, 1998) (the trial court did not abuse its discretion when it permitted the State to reopen its case to present evidence of venue, an essential element of the offense, despite the fact that the court had already overruled the defendant's motion for acquittal at the close of the State's case); *see generally, Ohio Trial Practice*, § 8:5, Order of Proof (May 2025 ed.) (collecting cases addressing reopening and the order of proof).

{¶21} Here the State intended to introduce evidence that the drug buy occurred within 1,000 feet of the high school. The State addressed this element in its opening statement and acknowledged that the stipulation did not include the distance. However, through oversight or mistake, the State failed to elicit that testimony from the witness when he was on the stand in the case in chief. This failure was a mistake, an oversight on the State's part. It was within the trial court's discretion to permit the evidence to be admitted after Miller's motion for acquittal. The trial court's decision was not unreasonable, arbitrary, or unconscionable. We find that the trial court did not abuse its discretion in permitting the State to reopen its case to introduce the high school's distance from the drug buy.

{¶22} We overrule Miller's second assignment of error.

IV. CONCLUSION

{¶23} We overrule the assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
Michael D. Hess, Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**