OPINION
{¶ 1} David A. Hoxie, M.D. ("appellant") appeals from the decision of the Franklin County Court of Common Pleas, which affirmed a decision by the State Medical Board of Ohio ("appellee") that permanently revoked appellant's license to practice medicine in Ohio.
 {¶ 2} This appeal arises from a June 11, 2003 notice of hearing, which advised appellant that appellee intended to take action on his certificate to practice medicine and surgery in the state of Ohio. R.C. 4731.22 authorizes appellee to revoke or suspend a certificate for the commission of specified acts relating generally to an individual's fitness to practice medicine.
 {¶ 3} Upon appellant's request, appellee held a hearing. Appellant was the first witness to testify. Appellant testified that he is a physician licensed to practice medicine in Ohio and Virginia. He was operating a family practice in Waverly, Ohio, and was also serving as the Pike County Coroner, an elected position.
 {¶ 4} Appellee's counsel questioned appellant concerning his applications to practice in Ohio and Virginia, and his application for registration with the Drug Enforcement Administration ("DEA"). Appellee submitted copies of appellant's applications.
 {¶ 5} On or about January 20, 1995, appellant submitted an application for a license to practice medicine in Virginia. Appellant checked "No" to question number 8, which asked:
Have you ever been convicted of a violation of/or pled Nolo Contendere to any federal, state, or local statute, regulation or ordinance, or entered into any plea bargaining relating to a felony or misdemeanor? (Excluding traffic violations, except convictions for driving under the influence.)
On September 21, 1995, the Commonwealth of Virginia Board of Medicine granted appellant a certificate.
 {¶ 6} On or about October 13, 1995, appellant submitted an application for registration to the DEA. Appellant checked "NO" to question number 4(b), which asked:
Has the applicant ever been convicted of a crime in connection with controlled substances under State or Federal law?
 {¶ 7} On July 1, 1996, appellant submitted an application for a certificate to practice medicine in Ohio. Appellant checked "NO" to question number 17, which asked:
Have you ever been convicted or found guilty of a violation of federal law, state law, or municipal ordinance other than a minor traffic violation?
 {¶ 8} Counsel for appellee also questioned appellant concerning his deposition before board staff in April 2003. In that deposition, appellant stated that he had been arrested in the state of California 10 to 15 times, all for minor traffic offenses. He also had denied that he had been arrested for possessing marijuana, possessing phencyclidine ("PCP"), driving under the influence of drugs or alcohol or being under the influence of PCP. He denied that he had ever been placed on probation, and he denied that he had ever been in a drug rehabilitation program.
 {¶ 9} Counsel for appellee then questioned appellant at length concerning certified copies of records held by the state of California. These records indicated that appellant had been arrested or detained by the Los Angeles Police Department multiple times in the 1970s and 1980s: (1) on December 15, 1973, for possessing marijuana; (2) on September 19, 1978, for possessing PCP; (3) on July 11, 1981, for driving under the influence of alcohol and/or drugs; (4) on August 7, 1983, for driving under the influence and possession of PCP; (5) on January 26, 1984, for driving under the influence of PCP; and (6) on September 25, 1984, for driving under a suspended license.
 {¶ 10} Appellant also presented additional evidence relating to the August 7, 1983 arrest. That evidence consisted of: (1) a copy of a fingerprint card, which includes information identifying appellant and references to the arrest, charge, and final disposition; (2) an untitled document indicating first pleas of not guilty to three charges and final pleas of "NOLO" to two charges, a sentence of probation, and a subsequent violation and revocation of probation; (3) a Probation Flash Notice dated December 26, 1983, indicating that appellant's probation would expire on November 29, 1985, and referencing "1000.2PC DRUG/DIVERSION"; and (4) a Probation Flash Notice dated July 31, 1984, indicating appellant's status as "Probation/Diversion Terminated[.]"
 {¶ 11} In response to appellee's questions about the records, appellant verified the accuracy of virtually all the identifying information contained in them, e.g., his name, address, birth date, physical description, and car. However, he adamantly denied ever being arrested for, charged with, convicted of, or placed on probation or diversion for any charges relating to anything other than traffic violations. For example, as to the December 12, 1973 arrest, the following discussion occurred:
THE EXAMINER: On the first page there is a charge and it says" P-o-s-s-m-a-r-j" and there is a code number. If we looked up that code number and it was for possessing marijuana, you would still dispute the fact?
THE WITNESS: Absolutely. I dispute the fact that I was ever arresting for anything in relation to drugs. And we can save time because that's my answer to all of this. I've never been arrested for anything other than traffic-related failure to appear offenses.
THE EXAMINER: Despite —
THE WITNESS: Despite all of this.
THE EXAMINER: — this has possession of marijuana?
THE WITNESS: Exactly. Absolutely, yes.
THE EXAMINER: Okay.
BY [appellee's counsel]:
Q. And just so we are clear, the officer's narrative then who explains everything that happened, you are stating none of that happened and that the officer made this up, I guess, for lack of a better word?
A. I suppose so. Right. Yes, I would say that.
(Tr. at 49-50.)
 {¶ 12} Upon questioning concerning each of the California documents, appellant similarly denied the accuracy of the substantive portion of each record, including the reporting officers' detailed, handwritten explanations of the arrest or detention. When asked to explain the discrepancy between the records and his testimony, appellant surmised that the Los Angeles Police Department had fabricated the documents.
 {¶ 13} As to allegations that he prescribed medication for a family member, appellant admitted that he had prescribed medication for his wife. He explained that he had not thoroughly understood the board's rules concerning prescriptions for family members, and he stated that, given his current understanding, he would not prescribe scheduled substances to a family member.
 {¶ 14} As to allegations that he post-dated prescriptions, appellant admitted that he sometimes post-dated prescriptions for the convenience of his patients. When asked whether he was admitting that the subject prescriptions were "illegal" or "not within compliance of the law[,]" appellant replied, "Yes, sir." (Tr. at 100.)
 {¶ 15} Appellee also presented the testimony of Kevin Randolph Beck, a former investigator for appellee. As part of his investigation of appellant, Beck spoke with an officer of the Ross County Sheriff's Office, who ran a background check on appellant. According to Beck, that check revealed that appellant had been arrested several times in California. Beck also testified that he and DEA Agent Dawn Valerie Mitchell interviewed appellant in March 2002, concerning his criminal history, applications to practice medicine in Ohio and Virginia, and application for DEA registration. During that interview, according to Beck, appellant denied ever being arrested for anything related to alcohol or controlled substances. Beck also testified that, when asked why it took appellant 10 years to obtain his undergraduate degree, appellant stated that he had been in jail. Upon questioning by appellant's counsel, Beck stated that he was not familiar enough with drug diversion programs to say whether placement in a diversion program would result in a conviction.
 {¶ 16} Appellee also presented the testimony of DEA Agent Mitchell. Mitchell testified that she had conducted a criminal check of appellant using the National Criminal Information Center ("NCIC") and that the check revealed appellant had been arrested for possessing controlled substances and for being under the influence of controlled substances. Mitchell stated that she had asked DEA Investigator Dwight A. Cokely to obtain the arrest records. Mitchell confirmed that, after she received and reviewed the records, she interviewed appellant. She testified that she asked appellant if he had ever been arrested, charged or convicted for anything relating to controlled substances and that appellant had denied ever being arrested, charged, convicted or placed on probation for anything related to controlled substances. She also testified that, while appellant stated that he had a California driver's license, the investigation determined that he had had a driver's license, but it had been suspended in New York, Virginia, and Michigan. In response to a question from appellant's counsel concerning whether the records included a record of any court conviction, Mitchell stated: "Not a record from a courthouse that says the Superior Court, no." (Tr. at 135.)
 {¶ 17} Appellee submitted the affidavit of DEA Investigator Cokely for the purpose of explaining the California documents. However, the hearing examiner sustained an objection by appellant and struck a portion of the affidavit. As admitted, the affidavit simply identifies Cokely as a former DEA investigator and states that Cokely was contacted by a Columbus DEA agent, asked to obtain the records, and asked to interview the keeper of those records.
 {¶ 18} Finally, appellee presented evidence of a DEA administrative proceeding. The evidence included the findings and recommendations of an administrative law judge, who found a basis to revoke appellant's DEA registration, but did not indicate a final decision on the matter by the DEA.
 {¶ 19} The hearing examiner thereafter issued a detailed report and recommendation, which recommended that appellee permanently revoke appellant's license. Specifically, the hearing examiner found the evidence sufficient to conclude that appellant had been convicted of one misdemeanor count of being under the influence of a controlled substance (PCP) and to one count of driving under the influence of the controlled substance (PCP) stemming from his August 7, 1983 arrest. Accordingly, the hearing examiner found that he had given false answers in his Ohio, Virginia, and DEA applications. The hearing examiner also found that appellant had given false answers concerning his criminal history in the March 2002 interview and the April 2003 deposition. As to that criminal history, the hearing examiner gave detailed descriptions of the arrest reports. In particular, she found that appellant had been arrested, but not charged, for his December 1973 actions; arrested for his September 1978 actions; detained, but not arrested, for his July 1981 actions; arrested, charged, convicted, and placed on probation for his August 1983 actions; and detained, but not arrested, for his January 1984 actions. Finally, the hearing examiner found that appellant had inappropriately prescribed medication to a family member and post-dated prescriptions for three patients. Based on these factual findings, the hearing examiner concluded that appellant's actions constituted nine violations supporting revocation under R.C. 4731.22: "fraud, misrepresentation, or deception in applying for or securing any certificate to practice or certificate of registration issued by the board" under R.C.4731.22(A); publishing a "false, fraudulent, deceptive, or misleading statement" under R.C. 4731.22(B)(5); "[m]aking a false, fraudulent, deceptive, or misleading statement * * * in securing or attempting to secure any certificate to practice or certificate of registration issued by the board" under R.C.4731.22(B)(5); "[c]ommission of an act in the course of practice that constitutes a misdemeanor in this state, regardless of the jurisdiction in which the act was committed" under R.C.4731.22(B)(12), i.e., falsification under R.C. 2921.13; "[c]ommission of an act that constitutes a felony in this state, regardless of the jurisdiction in which the act was committed" under R.C. 4731.22(B)(10), i.e., perjury under R.C. 2921.11; "[f]ailure to cooperate in an investigation conducted by the board" under R.C. 4731.22(B)(34); "violating or attempting to violate, directly or indirectly * * * any provisions of this chapter or any rule promulgated by the board" under R.C.4731.22(B)(20), i.e., Ohio Adm. Rule 4731-11-04(B); "violating or attempting to violate * * * any provisions of this chapter or any rule promulgated by the board" under R.C. 4731.22(B)(20), i.e., Ohio Adm. Rule 4731-11-08; and "[c]ommission of an act in the course of practice that constitutes a misdemeanor in this state, regardless of the jurisdiction in which the act was committed" under R.C. 4731.22(B)(12), i.e., R.C. 3719.06.
 {¶ 20} Appellee thereafter approved and confirmed the hearing examiner's proposed findings. Appellee issued an order permanently revoking appellant's certificate to practice medicine and surgery in the state of Ohio.
 {¶ 21} Appellant appealed appellee's order to the court of common pleas. Upon review, the court found that appellee's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Appellant timely appealed to this court, where he raises two assignments of error:
Assignment of Error 1:
The Court of Common Pleas abused its discretion in upholding the Medical Board's Order to permanently revoke Dr. Hoxie's license in light of a complete absence of evidence in support of the Medical Board's allegations.
Assignment of Error 2:
The Court of Common Pleas erred in upholding the Medical Board's order to permanently revoke Dr. Hoxie's license without a finding of intent to deceive or mislead the Medical Board or other government agencies.
 {¶ 22} In an administrative appeal, pursuant to R.C. 119.12, the trial court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with the law. In applying this standard, the court must "give due deference to the administrative resolution of evidentiary conflicts." Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 111.
 {¶ 23} The Ohio Supreme Court has defined reliable, probative, and substantial evidence as follows:
* * * (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.
(Footnotes omitted.) Our Place, Inc. v. Ohio Liquor ControlComm. (1992), 63 Ohio St.3d 570, 571.
 {¶ 24} On appeal to this court, the standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. RossfordExempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.
(1992), 63 Ohio St.3d 705, 707. In reviewing the court of common pleas' determination that the board's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion. Roy v. Ohio State Med. Bd. (1992),80 Ohio App.3d 675, 680. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219. However, on the question of whether the board's order was in accordance with the law, this court's review is plenary. Univ. Hosp., Univ. ofCincinnati College of Medicine v. State Emp. Relations Bd.
(1992), 63 Ohio St.3d 339, 343.
 {¶ 25} In his first assignment of error, appellant asserts "a complete absence of evidence in support of" appellee's allegations. We disagree.
 {¶ 26} Appellant asserts first that appellee had insufficient evidence to conclude that appellant had committed a practice-related misdemeanor by making false statements during the March 2002 interview. Specifically, appellant cites appellee's failure to submit a court record of conviction and asserts the unreliability of the records that were submitted.
 {¶ 27} We acknowledge, as appellee acknowledged, the absence of a final court record of conviction. As appellee notes, however, this and other Ohio courts have allowed evidence other than a certified judgment of conviction to prove a prior offense, even in a criminal setting. See, e.g., City of Middleburg Hts.v. D'Ettorre (2000), 138 Ohio App.3d 700; State v. Perkins
(June 22, 1998), Madison App. No. CA97-10-047; Cleveland Metro.Park Dist. v. Schillinger (Sept. 4, 1997), Cuyahoga App. No. 71512; City of Columbus v. Malinchak (Mar. 29, 1988), Franklin App. No. 87AP-1038. Here, the testimony and certified records that were submitted are reliable, substantial, and probative evidence that a conviction occurred. Taken together, the disposition sheet and the probation flash notices sufficiently identify the charges filed, the pleas made, and the final disposition. In addition, the January 26, 1984 arrest report states that appellant was on probation at that time and the probation would expire on November 29, 1985. And, the testimony of DEA Agent Mitchell, who reviewed the NCIC database and the records, supports the presence of a conviction. Therefore, the trial court did not abuse its discretion in determining that there was evidence of a conviction.
 {¶ 28} Furthermore, these and the additional arrest records support the trial court's finding of evidence sufficient to support appellee's finding that appellant lied in the March 2002 interview and the April 2003 deposition when he stated that he had never been arrested. Appellant cites to the lack of evidence to explain the documents. While such evidence might have been helpful, it was by no means necessary for an understanding of the documents.
 {¶ 29} First, law enforcement investigation reports are generally admissible, even in judicial settings where the rules of evidence apply. Felice's Main Street, Inc. v. Liquor ControlComm., Franklin App. No. 01AP-1405, 2002-Ohio-5962, citing Evid.R. 803(6), 803(8). "The rationale behind permitting such evidence is that such routine reports have a very high indicia of reliability." Husnia, Inc. v. Liquor Control Comm. (June 24, 1999), Cuyahoga App. No. 74216. Appellant does not argue here that the records were inadmissible.
 {¶ 30} Second, appellant himself added to the reliability of the records. He verified all of the significant identifying information contained within the documents, including his name, physical description, social security number, birth date, address, and car.
 {¶ 31} Third, for the most part, these records are self-explanatory. They include multiple pages of detailed, handwritten narrative by the arresting officers, lab reports, diagrams, and detailed, corroborating notations concerning appellant's criminal history. The August 7, 1983 report, for example, is eight pages long, with a completed one-page breathalyzer test checklist attached. It includes a three-and-a-half-page narrative concerning the arrest, appellant's actions and statements, and the names and serial numbers of the officers involved. Given such detail, appellant's blanket assertion of unreliability is inaccurate.
 {¶ 32} Finally, the hearing examiner's careful review of each record accounted for any limitations, e.g., the absence of an indication of a final disposition or the presence of a certification that appellant had been detained, not arrested. Given appellant's adamant denial of the circumstances surrounding virtually all of the arrests and detentions, and his assertion that the Los Angeles Police Department fabricated them, it was reasonable for the hearing officer, appellee, and the trial court to conclude that appellant's testimony was not credible. It is not our role to second-guess that credibility determination nor, given the strength of the documentary evidence here, are we inclined to do so. Graor v. State Med. Bd., Franklin App. No. 04AP-72, 2004-Ohio-6529 (trial court review includes appraisal of evidence as to witnesses' credibility), citing Lies v.Veterinary Med. Bd. (1981), 2 Ohio App.3d 204, 207; and Andrewsv. Bd. of Liquor Control (1955), 164 Ohio St. 275, 280.
 {¶ 33} Appellant also argues that the evidence does not support appellee's finding that appellant failed to cooperate in the investigation. Appellant notes that he responded to appellee's subpoenas and interrogatories and answered appellee's deposition questions. R.C. 4731.22(B)(34) authorizes appellee to revoke a certificate for "[f]ailure to cooperate in an investigation conducted by the board under division (F) of this section, including * * * failure to answer truthfully a question presented by the board at a deposition or in written interrogatories[.]" Having concluded that appellee and the trial court correctly determined that appellant gave false answers during the March 2002 interview and the April 2003 deposition, we find sufficient support for appellee's finding that appellant did not cooperate in its investigation.
 {¶ 34} For all of these reasons, we overrule appellant's first assignment of error.
 {¶ 35} In his second assignment of error, appellant asserts that appellee's order is invalid because appellee did not find that appellant intended to deceive or mislead appellee. In appellant's view, he did not hide his encounters with police and revealed what he believed to be the truth about them, i.e., his arrests were related to traffic violations or a neighbor's complaint about noise. In support, appellant cites this court's decisions in In re Wolfe (1992), 82 Ohio App.3d 675, 687;Rajan v. State Med. Bd. of Ohio (1997), 118 Ohio App.3d 187; and Webb v. State Med. Bd. of Ohio (2001), 146 Ohio App.3d 621. We find, however, that appellant's reliance on these prior decisions is misplaced.
 {¶ 36} In Wolfe, we found that an applicant's "technically inaccurate" statements and "inept" disclosures did not support a finding of intentional deceit. Wolfe at 687. In Rajan, we found that the hearing examiner failed to make findings of fact with regard to any evidence that the appellant acted with the intent to deceive or mislead. In Webb, we found that there was a finding by the hearing examiner that the appellant's misrepresentations to the board were unintentional. Here, appellant's testimony goes well beyond technically inaccurate statements, inept disclosures or unintentional misrepresentations. In contrast to the individuals at issue in the cited cases, appellant disclosed nothing about drug-related offenses or arrests and then repeatedly denied that the events had even occurred. The hearing examiner made detailed findings concerning the evidence and appellant's actions, and found that appellant had provided false answers on his Ohio, Virginia, and DEA applications in the March 2002 interview and in the April 2003 deposition. Thus, the hearing examiner, appellee, and the trial court reasonably inferred appellant's intent from the surrounding circumstances. See Graor, citing Hayes v. StateMed. Bd. of Ohio (2000), 138 Ohio App.3d 762, 770. Therefore, we overrule appellant's second assignment of error.
 {¶ 37} Having overruled appellant's first and second assignments of error, we affirm the decision of the Franklin County Court of Common Pleas.
Judgment affirmed.
Klatt, P.J., and Deshler, J., concur.
Deshler, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.