OPINION
{¶ 1} Appellant, Gerald Brian Applegate, M.D., appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of appellee, State Medical Board of Ohio ("Board"), suspending his medical license. For the following reasons, we affirm in part and reverse in part. *Page 2 
 {¶ 2} In an August 10, 2005 letter, the Board notified Applegate that it intended to take disciplinary action against him for four reasons. First, the Board alleged that Applegate fraudulently answered a question contained in his 1993 licensure application. Applegate checked "no" next to the question, "[h]ave you been a defendant to a legal action involving professional liability (malpractice), or had a professional liability claim paid on your behalf, or paid the claim yourself?" At the time Applegate answered that question, he had, in fact, been a defendant in a malpractice action that his insurer had settled on his behalf.
 {¶ 3} Second, the Board alleged that Applegate fraudulently answered a question on his 1996 renewal application. Applegate responded "no" to the question, "[a]t any time since signing your last application for renewal of your certificate have you: * * * [h]ad any clinical privileges suspended, restricted or revoked for reasons other than failure to maintain records or attend staff meetings?" At the time Applegate answered that question, the North Hills Passavant Hospital ("Hospital") had placed Applegate's privileges on probation for unprofessional conduct. The Hospital disciplined Applegate due to his lack of veracity regarding whether he had maintained full-time coverage for patients he was responsible for as an "on call" physician.
 {¶ 4} Third, the Board alleged that Applegate had entered into a consent agreement and order with the Pennsylvania State Board of Medicine ("Pennsylvania Board") wherein the Pennsylvania Board issued a 90-day stayed suspension of Applegate's Pennsylvania medical license and levied a civil penalty. This discipline resulted from Applegate's admission that he had prescribed controlled substances for his wife without maintaining the appropriate medical records. *Page 3 
 {¶ 5} Fourth, the Board alleged that Applegate had entered into a consent agreement and order with the New York State Board for Professional Medical Conduct ("New York Board") wherein the New York Board issued a 90-day stayed suspension of Applegate's New York medical license and restricted Applegate from prescribing controlled substances to himself and his family members. The New York Board subjected Applegate to discipline because the Pennsylvania Board had sanctioned him for acts that would have constituted professional misconduct under New York law if Applegate had committed those acts in New York.
 {¶ 6} Applegate requested and received an adjudicatory hearing. After the hearing, the hearing examiner issued a report and recommendation in which she concluded that evidence submitted at the hearing proved each factual allegation made in the August 10, 2005 letter. The hearing examiner also concluded that Applegate's conduct warranted discipline under R.C. 4731.22(A), (B)(5), and (B)(22), and she recommended that the Board suspend Applegate's license for one year.
 {¶ 7} The Board approved and confirmed the hearing examiner's findings of fact and conclusions of law. Additionally, it issued an order suspending Applegate's license for one year and subjecting Applegate to various probationary terms, conditions, and limitations. Applegate appealed the Board's order to the trial court pursuant to R.C. 119.12. On January 16, 2007, the trial court issued a decision and entry finding that the Board's order was supported by reliable, probative, and substantial evidence. Consequently, the trial court affirmed the Board's order.
 {¶ 8} Applegate now appeals from the trial court's judgment and assigns the following errors: *Page 4 
 1. The lower court Decision and Entry affirming the State Medical Board of Ohio Order was an abuse of discretion, because there was no evidence that Appellant intended to mislead the Board when after his clinical privileges were only placed on "probation" he responded "no" to a question on his 1996 licensure renewal application inquiring whether his clinical privileges had been "suspended, restricted or revoked."
 2. The lower court Decision and Entry affirming the State Medical Board of Ohio Order was an abuse of discretion, because there was no evidence that Appellant intended to mislead the Board where he incorrectly responded "no" to a question on his 1993 licensure application regarding previous professional liability claims.
 3. The lower court Decision and Entry affirming the State Medical Board of Ohio Order was an abuse of discretion, because the Board relied upon events relating to Appellant's 1996 licensure renewal application in making inferences regarding his intent in responding to questions on his 1993 licensure Application.
 4. The lower court Decision and Entry affirming the State Medical Board of Ohio Order was an abuse of discretion, because the Board, in concluding that Appellant intended to mislead the Board with his response on the 1993 licensure Application, relied upon uncharged conduct from 1996 in evaluating his credibility, while at the same time disregarding appropriate evidence regarding his credibility.
 5. The lower court Decision and Entry affirming the State Medical Board of Ohio Order was not in accordance with law, because the Board violated Appellant's due process rights by failing to provide him with notice that the Board would consider the conduct underlying the privileges action at issue in his 1996 licensure renewal application question when deciding what discipline to impose upon his Ohio license.
 6. The lower court Decision and Entry affirming the State Medical Board of Ohio Order is not in accordance with law, because the sanction imposed (one year suspension of Appellant's Ohio license followed by one year of probation) has no reasonable basis and is too harsh based upon what the Ohio Board was able to prove regarding the actions taken *Page 5 
by the New York and Pennsylvania Boards against Appellant's medical licenses in those states.
 {¶ 9} By Applegate's first assignment of error, he argues that the trial court abused its discretion in determining that reliable, probative, and substantial evidence supported the Board's finding that he intentionally provided false information on his 1996 renewal application. We agree.
 {¶ 10} Pursuant to R.C. 119.12, when a trial court reviews an order of an administrative agency, it must consider the entire record to determine if the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. To be "reliable," evidence must be dependable and true within a reasonable probability.Our Place, Inc. v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570,571. To be "probative," evidence must be relevant, or, in other words, tend to prove the issue in question. Id. To be "substantial," evidence must have importance and value. Id.
 {¶ 11} An appellate court's review of the evidence is more limited than a trial court's. Instead of appraising the weight of the evidence, an appellate court determines whether the trial court abused its discretion, i.e., whether the trial court demonstrated a perversity of will, passion, prejudice, partiality, or moral delinquency. Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621. Absent such an abuse of discretion, an appellate court must affirm the trial court's judgment, even if the appellate court would have arrived at a different conclusion than the trial court. Lorain City School Dist. Bd. of Edn. v. State Emp.Relations Bd. (1988), 40 Ohio St.3d 257, 261.
 {¶ 12} The Board disciplined Applegate under R.C. 4731.22(B)(5) for falsely responding to a question on his 1996 renewal application. Pursuant to R.C. 4731.22(B)(5), the Board may discipline a physician if he makes "a false, fraudulent, *Page 6 
deceptive, or misleading statement * * * in securing or attempting to secure any certificate to practice * * * ." In order to discipline a physician under R.C. 4731.22(B)(5), the Board must prove that the physician intended to mislead the Board. Coleman v. State Med. Bd. ofOhio, Franklin App. No. 06AP-1299, 2007-Ohio-5007, at ¶ 12;Istanbooly v. Ohio State Med. Bd., Franklin App. No. 04AP-76,2004-Ohio-3696, at ¶ 15; Gipe v. State Med. Bd. of Ohio, Franklin App. No. 02AP-1315, 2003-Ohio-4061, at ¶ 64. Intent may be inferred from the surrounding facts and circumstances, such as when a physician knows information that he fails to disclose in response to a direct question.Coleman, at ¶ 12; Istanbooly, at ¶ 16; Gipe, at ¶ 64.
 {¶ 13} Applegate acknowledges that he answered "no" when the 1996 renewal application asked if he "[h]ad any clinical privileges suspended, restricted or revoked * * *." Applegate also admits that the Hospital placed his privileges on probation in 1994. However, Applegate contends that the Board could not infer intent to mislead from this evidence because probation is neither a suspension, a restriction, nor a revocation. In response, the Board first argues that pursuant to the commonly understood definitions of the relevant terms, probation is a restriction. Consequently, the Board maintains that Applegate should have known that his probation restricted his privileges and, thus, his "no" answer demonstrates his intent to mislead the Board.
 {¶ 14} According to Webster's Third New International Dictionary (1961) 1806, "probation" means "the action of subjecting an individual to a period of testing and trial so as to be able to ascertain the individual's fitness or lack of fitness for something." To "restrict" is "to set bounds or limits to" so as "to check free activity * * *." Id. at 1937. After comparing these two definitions, we cannot conclude that probation is a restriction. *Page 7 
"Probation" denotes a testing or trial period, but it does not inherently include limitations to a person's actions during that testing or trial period. In other words, a physician whose privileges are on probation may be on trial (and may ultimately lose his privileges if he fails that trial), but he is not restricted in the scope of his activities by virtue of being on probation. As the disputed question asked about restrictions only (and not probation), a fact finder could not infer that from Applegate's "no" answer that he intended to mislead the Board.[1]
 {¶ 15} Next, the Board argues that Applegate's privileges were restricted because the report from the National Practitioner Data Bank ("NPDB") said so. The NPDB collects information regarding malpractice payments, medical licensure actions, and other adverse actions against physicians. The report generated from the NPDB about Applegate lists his probation as an adverse action and categorizes the type of action taken as "other priv restrict: unprofessional conduct (64510)." The Board contends that this classification means that the Hospital, who reported the probation to the NPDB, viewed Applegate's probation as a restriction on his privileges.
 {¶ 16} Even if we were to accept the Board's interpretation of the NPDB's classification code, we find that this evidence does not establish that Applegate intentionally misled the Board. In order to prove Applegate's intent through circumstantial evidence, the Board would also have to demonstrate that Applegate knew that the Hospital viewed the probation as a restriction. The Board failed to present any such evidence. Recognizing this problem, the trial court held that Applegate had constructive *Page 8 
knowledge that his probation constituted a restriction because Applegate's NPDB report was publicly available. Contrary to the trial court's assertion, information collected in the NPDB is not disclosed to the general public. Section 60.11, Title 45, C.F.R. (limiting who may request information contained in the NPDB and specifying release in only six instances). Therefore, we find no support for the Board's position in the trial court's reasoning.
 {¶ 17} Because the Board failed to present any evidence (either direct or circumstantial) to prove that Applegate intended to mislead the Board, we find that the trial court abused its discretion in holding otherwise. Accordingly, we sustain Applegate's first assignment of error.
 {¶ 18} By Applegate's second assignment of error, he argues that the trial court abused its discretion in concluding that reliable, probative, and substantial evidence supported the Board's finding that he intentionally provided false information in his 1993 licensure application. We disagree.
 {¶ 19} In the case at bar, Applegate responded "no" to the question, "[h]ave you been a defendant in a legal action involving professional liability (malpractice) * * * ?" The Board, however, offered into evidence both the complaint and answer from a malpractice action a former patient filed against Applegate in February 1991. Attached to the answer is an affidavit signed by Applegate in which he swore that all the averments contained in the answer were true and correct. Thus, the evidence shows that when Applegate completed the 1993 licensure application, he knew that he had been a defendant in a malpractice action. Nevertheless, he answered "no" to a clear, unambiguous question that sought to ascertain that very information. Given this reliable, probative, and *Page 9 
substantial evidence, we conclude that the trial court did not abuse its discretion in finding that Applegate intended to mislead the Board when completing his 1993 licensure application. Accordingly, we overrule Applegate's second assignment of error.
 {¶ 20} We next turn to Applegate's third and fourth assignments of error, by which he argues that the Board misjudged his credibility. Essentially, Applegate contends the Board should have believed his explanation that his erroneous answer to the malpractice question resulted from inattention, and not from an intention to mislead the Board.
 {¶ 21} An appellate court cannot second guess the Board's credibility determinations. Hoxie v. Ohio State Med. Bd., Franklin App. No. 05AP-681, 2006-Ohio-646, at ¶ 32. Further, even if this court were inclined to judge Applegate's credibility, we cannot find any fault with the Board's rejection of Applegate's explanation. As the Board found, it is unlikely that Applegate would forget the February 1991 malpractice action — it was the first malpractice action filed against him, it was settled for a significant amount, and it occurred only two years prior. Accordingly, we overrule Applegate's third and fourth assignments of error.
 {¶ 22} By Applegate's fifth assignment of error, he asserts that the Board violated his right to due process when it disciplined him for certain misconduct without first notifying him that it was charging him based upon that misconduct. We disagree.
 {¶ 23} Due process entitles an individual to fair notice of the precise nature of the charges to be brought forth at a disciplinary proceeding. Althof v. Ohio State Bd. of Psychology, Franklin App. No. 05AP-1169, 2007-Ohio-1010, at ¶ 19; Sohi v. Ohio State Dental Bd.
(1998), 130 Ohio App.3d 414, 422. In this case, the Board's August 10, 2005 letter did not inform Applegate that the Board intended to discipline him for the *Page 10 
misconduct that motivated the Hospital to place Applegate on probation. This deficiency, however, did not violate Applegate's due process rights because Applegate was not disciplined for the disputed misconduct. Although two Board members mentioned that misconduct in reviewing the totality of the circumstances, the Board did not rely upon it as a reason to discipline Applegate. At most, the Board only viewed the disputed misconduct as further indication of Applegate's willingness to lie to protect his own self-interest. Accordingly, we overrule Applegate's fifth assignment of error.
 {¶ 24} By Applegate's sixth assignment of error, he argues that the trial court erred in not reversing the one-year suspension of his medical license as too harsh a sanction. Applegate maintains that the Board should have imposed a sanction similar to those that the Pennsylvania and New York Boards imposed. We disagree.
 {¶ 25} In an R.C. 119.12 appeal, "the Court of Common Pleas has no authority to modify a penalty that the agency was authorized to and did impose * * *." Henry's Café, Inc. v. Bd. of Liquor Control (1959), 170 Ohio St. 233, paragraph three of the syllabus. R.C. 4731.22(B)(22) gives the Board the discretion to suspend a physician's Ohio license if another state's medical board limits or suspends the physician's license to practice in that state. In the case at bar, the Board determined that both Pennsylvania and New York suspended Applegate's license. Applegate does not challenge that determination. Therefore, the Board had the authority to suspend Applegate's license, and the trial court could not modify that sanction. Accordingly, we overrule Applegate's sixth assignment of error.
 {¶ 26} Of the four bases on which the Board disciplined Applegate, we have found one to be unsupported by reliable, probative, and substantial evidence. "An appellate *Page 11 
court may remand to the administrative agency for reconsideration of a sanction where the court finds one or more of multiple violations to be unsupported by reliable, probative, and substantial evidence."Coleman, at ¶ 19. Given the circumstances of this case, we remand this matter to the Board so that it may, in its discretion, reconsider the appropriate sanction.
 {¶ 27} For the foregoing reasons, we sustain Applegate's first assignment of error and overrule his second, third, fourth, fifth, and sixth assignments of error. Further, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, and we remand this matter to that court with instructions to remand the matter to the Board to reconsider the appropriate sanction in light of this court's decision.
Judgment affirmed in part and reversed in part; and cause remandedwith instructions.
BRYANT and DESHLER, JJ., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Tangentially, we note that the Board did not offer any documentary or testimonial evidence from the Hospital as to the terms or conditions of Applegate's probation. While it is conceivable that the Hospital imposed restrictions upon the exercise of Applegate's privileges as a part of his probation, a fact finder cannot merely assume that those restrictions existed. *Page 1