[Cite as *Zedaker v. State Med. Bd.*, 2024-Ohio-6108.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| James Zedaker, | : | |
| Appellant-Appellant, | : | |
| v. | : | No. 24AP-244 |
| | | (C.P.C. No. 23CV-6056) |
| State Medical Board of Ohio, | : | |
| | | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on December 31, 2024

**On brief:** *Graff & McGovern, L.P.A.*, and *Brandon M. Smith*, for appellant. **Argued:** *Brandon M. Smith*.

**On brief:** *Dave Yost*, Attorney General, and *Kyle C. Wilcox*, for appellee. **Argued:** *Kyle C. Wilcox*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Appellant, James Zedaker, appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of appellee, State Medical Board of Ohio ("Board"), suspending his license to practice as a physician assistant ("PA") for six months, imposing a $1000 fine, and placing his license on probation, subject to certain conditions, for a minimum of one year. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} Appellant obtained an Ohio license to practice as a PA in 2004 and has renewed his license every two years since that time. He is also actively licensed as a PA in Florida and California. In January 2016, he was hired by Florida State University ("FSU") to develop an accredited PA training program; the program began in fall 2017.

{¶ 3}   By letter dated November 5, 2021, FSU informed appellant that he was the subject of a formal sexual misconduct investigation based on complaints by FSU employees.  On November 29, 2021, appellant was interviewed by FSU investigators about the allegations.  On December 2, 2021, appellant submitted an online application seeking to renew his Ohio PA license.  As relevant here, in the renewal application, he answered "No" when asked "[a]t any time since signing your last application for renewal of your certificate have you been investigated, warned, censured, put on probation, terminated, or disciplined by any employer, hospital, group, practice, nursing home, clinic, health maintenance organization, or other similar institution, for any reason?" (Record of Proceedings, Dec. 2, 2021 License Renewal App., State's Ex. 3 at 6.)

{¶ 4}   By notice dated April 13, 2022, the Board informed appellant that it would determine whether to take disciplinary action against his license to practice as a PA for the following reason:

> (1) On or about December 2, 2021, you submitted an online application to renew your license to practice as a physician assistant [Application]. On your Application, you answered "no" to two questions regarding being involved in any investigations since signing your last application for renewal. In fact, you were notified of a pending investigation at Florida State University on November 5, 2021, and were interviewed as part of the investigation on November 29, 2021.
>
> Your acts, conduct, and/or omissions as alleged in paragraph (1) above, individually and/or collectively, constitute "[m]aking a false, fraudulent, deceptive, or misleading statement in soliciting or advertising for employment as a physician assistant; in connection with any solicitation or advertisement for patients; in relation to the practice of medicine as it pertains to physician assistants; or in securing or attempting to secure a license to practice as a physician assistant, as that clause is used in Section 4730.25(B)(8), Ohio Revised Code.

(Record of Proceedings, Oct. 24, 2022 Notice, State's Ex. 1(a).)

{¶ 5}   Appellant requested and received an adjudicatory hearing.  At that hearing, held before a Board hearing examiner on October 24, 2022, appellant testified he received the November 5, 2021 letter from FSU and was thus aware that he was under investigation related to allegations of sexual misconduct made by FSU employees; he further

acknowledged that he hired legal counsel approximately one week later to defend him. When asked by the assistant attorney general whether he was interviewed by FSU investigators pursuant to that investigation, counsel for appellant objected and requested that the assistant attorney general "establish timelines per the question so that the record is clear what was in my client's head and on what dates so that it's not just a blurring or a merging." (Record of Proceedings Tr. at 25.) In response, the assistant attorney general asked appellant to identify a section of State's exhibit 5 establishing that as part of the investigation, he was interviewed by FSU investigators on November 29, 2021. State's exhibit 5 consists of FSU's investigative file, an 86-page document which includes an 8-page investigative summary dated January 4, 2022, along with several attachments. The attachments include a written statement from one of appellant's alleged accusers, investigator notes from appellant's November 29, 2021 interview, investigator notes from interviews of appellant's alleged accusers, and samples of text messages sent between appellant and an alleged accuser.

{¶ 6} Appellant averred that he was "pretty much * * * kept in the dark as to what the investigation was." (Record of Proceedings Tr. at 27.) In response to that statement, the assistant attorney general asked appellant to identify portions of State's exhibit 5 setting forth his responses to questions posed by the FSU investigators. Appellant ultimately agreed that he understood from the interview that he was being investigated about his employment at FSU and his relationships with employees.

{¶ 7} Appellant further testified that in the December 2, 2021 Ohio license renewal application, he answered no when asked if at any time since signing his last renewal application he had been investigated for any reason by any employer. Appellant averred that he knowingly answered no to the question because it was an accurate answer "for the time it was answered." (Record of Proceedings Tr. at 40.) Appellant explained that he answered as he did because he interpreted the word "investigated" as pertaining to investigations having been conducted in the past rather than being presently conducted. Appellant clarified:

> To me, investigated is past tense. And I was - - in the middle
> of this [investigation]. So this was not an intent to mislead.
> This was just me reading the words that were there. And
> investigated is past tense. And I read this as, you know, I was

in the middle of something; not having been investigated, I
was being investigated.

(Record of Proceedings Tr. at 41.)

{¶ 8} Appellant acknowledged that the question does not ask whether a past investigation had been completed; however, he reiterated that the question "uses past tense words" and that the investigation by FSU "was not completed, and so I didn't look at this as I've been investigated." (Record of Proceedings Tr. at 42.) He further acknowledged that he was under investigation by FSU at the time he completed the license renewal application. He averred that had the question asked if he was "currently under investigation," he would have answered yes. (Record of Proceedings Tr. at 54-55.)

{¶ 9} At the conclusion of appellant's testimony, the state moved to admit State's exhibit 5 for the purpose of establishing dates related to the investigation, such as when appellant was notified of the investigation and when he was interviewed by FSU investigators. Counsel for appellant objected on grounds that the file included disparaging information about appellant unrelated to the proceedings at issue. The hearing examiner admitted State's exhibit 5 "for the purpose of which it is being offered." (Record of Proceedings Tr. at 66.)

{¶ 10} After a brief recess, the hearing examiner offered the following clarification regarding admission of State's exhibit 5:

> I do want to make a clarification. I'm looking at the notice letter, which is Exhibit 1a, and the notice letter is about a possible [R.C. 4730.25](B)(8) violation on the renewal application and is answered no -- Mr. Zedaker's answer to no [sic] to two questions. And Exhibit 5 was offered, my understanding - - and I'll give the parties the chance to address this after I'm done - - was being offered solely as to - - for the purposes of the dates of - - of when the investigation was occurring and when he - - when Mr. Zedaker was interviewed by the Florida officials.
>
> And I allowed the introduction of Exhibit 5 - - State's Exhibit 5 for the purposes of establishing when particular things happened during the investigation. And that's the only purpose that I'm allowing Exhibit 5 into the record. I don't - - I'm not considering a lot - - for the purposes of the report and recommendation, a lot of the other things that are said in Exhibit 5 about the allegations of sexual harassment because

that was not the stated purpose of the document being introduced. But I am allowing it for the purposes of how when [sic] the investigation was being conducted by Florida State. So that's my ruling.

Of course, the Board will review my -- both my factual findings and my legal decisions, but the - - that's - - so I'm allowing Exhibit 5 - - State's Exhibit 5 but for only those purposes.

(Record of Proceedings Tr. at 67-68.)

{¶ 11} Thereafter, counsel for appellant renewed the objection to consideration of State's exhibit 5 for any reason.

{¶ 12} On July 13, 2023, the hearing examiner issued a report and recommendation, finding that appellant's explanation for his answer to the question in the license renewal application was not credible. The hearing examiner reasoned:

[T]his question clearly calls for the disclosure of an investigation. * * * It specifically calls for any investigations conducted by his employer. Mr. Zedaker had not only recently been notified about an investigation but had answered questions by FSU officials in the presence of his attorney just days before he submitted his renewal application. The question essentially asked, "have you been investigated…by any employer…since signing your last application for renewal[.]" The obvious answer to that question, under Mr. Zedaker's circumstances, was "Yes." Mr. Zedaker claimed that because the question utilized the past tense when is [sic] said "investigated," instead of calling for an ongoing investigation, that he was justified in stating "No" to this question. This is simply not credible. The question was obviously calling for any investigation by any employer—not just investigations that had been concluded before he filled out his renewal application. Furthermore, having heard Mr. Zedaker's testimony, coupled with observing his demeanor when testifying, the Hearing Examiner finds this part of his testimony regarding the past tense of the word "investigated" to be incredulous. Even if the notice letter lacked sufficient factual details, he had just been interviewed by FSU officials extensively about the underlying allegations just days before he submitted his renewal application. The fact that he insisted at the hearing that his interpretation was justifiable is further troubling. Based on the following, the Hearing Examiner finds that Mr. Zedaker intended to mislead the Board when he answered "No" to the second question at issue.

(Record of Proceedings, July 13, 2023 Report & Recommendation at 12.)

{¶ 13} Thus, the hearing examiner concluded that appellant engaged in the conduct alleged in the Board's notice, which was sanctionable pursuant to R.C. 4730.25(B).[1] The hearing examiner recommended that appellant's license be suspended for 6 months, he be fined $1000, and he be placed on probation for a minimum of 1 year, with the condition that he complete a professional ethics course and a professional boundaries in the workplace course. In support of the recommended sanction, the hearing examiner averred:

> As to the appropriate sanction, there are a few aggravating factors. Mr. Zedaker clearly had a duty to be completely candid with the Board in his renewal application and failed to do so. Furthermore, at the hearing, he insisted he was justified in his failure to disclose. In mitigation, this appears to be an isolated incident, which is unlikely to reoccur. Furthermore, he has been a PA for several years, and has no prior disciplinary history. The Assistant Attorney General made no recommendation as to an appropriate sanction.
>
> As to the FSU investigation, the Hearing Examiner, in an abundance of caution, ruled that he would allow St. Ex. 5 to be introduced by the State, but would only consider it for purposes of a timeline. Even assuming the findings in the FSU investigation are true, his conduct at FSU does not appear to violate R.C. 4730.25 *et seq*. However, the Hearing Examiner does find that Respondent's motivation for his failure to disclose was his attempt to hide the investigation from the Board due to the serious nature of the allegations. Although the Hearing Examiner did not consider the findings of the investigation in its determination of whether Respondent violated R.C. 4730.24(B)(8) [sic], the "Board may consider aggravating circumstances, including uncharged misconduct, in determining the appropriate sanction for a member who violates the rules of practice." *Froe[h]lich v. Ohio State Med. Bd.*, 2016-Ohio-1035, 61 N.E.3d 568, ¶ 31 (10th Dist.2016). Although the allegations and findings from the FSU investigation are quite troubling, Mr. Zedaker's ability to

---

[1] In the renewal application, appellant also answered "No" when asked "[a]t any time since signing your last application for renewal of your certificate have you been investigated, warned, censured, put on probation, disciplined, or have had any charges, allegations or complaints filed against you, by any board, bureau, department, agency, or any other body, including those in Ohio?" (Record of Proceedings, License Renewal App. at 5.) The hearing examiner found that although appellant unreasonably responded "No" to this question, the state was unable to prove that appellant violated R.C. 4730.25(B). This finding was based on appellant's testimony regarding his subjective understanding of the question and his misunderstanding of the term "department" as used in the question. (Record of Proceedings, Report & Recommendation at 11-12.)

participate in the investigation appeared circumvented: He was not permitted to question his accusers/victims, he allegedly did not get an opportunity to offer evidence, and there did not appear to be any sort of official review of the findings.

(Record of Proceedings, Report & Recommendation at 12-13.)

{¶ 14} On July 14, 2023, the hearing examiner issued an errata as to the "Procedural Matters" section of the report and recommendation. The revised "Procedural Matters" section provides:

The hearing was held using videoconferencing software. During the hearing, the Respondent objected to State's Ex. 5 as irrelevant because it involved uncharged conduct. (Tr. at 66.) At the hearing, the Hearing Examiner allowed it solely for purposes of establishing a timeline of events. (Tr. 68-69.) After deliberations, the Hearing Examiner additionally considered notes taken from the Respondent's FSU interview, which was attached to Ex. 5, as to whether Respondent was sufficiently apprised of the allegations of the investigation to put him on notice he had an obligation to affirmatively answer the two questions at issue, which goes to the core of the Board's charges against him. That being said, the Hearing Examiner did not consider State's Ex. 5 for purposes of finding he violated the Board's charges. However, the Hearing Examiner did consider the limited testimony regarding the allegations in determining the recommended sanction. (Tr. at 27-28.)

(Record of Proceedings, July 14, 2023 Errata for Report & Recommendation.)

{¶ 15} Appellant filed objections to the hearing examiner's report and recommendation. Appellant first objected to the hearing examiner's admission and utilization of State's exhibit 5 on grounds that such violated his due process rights. Appellant maintained that the notice of intent was constitutionally deficient because it failed to adequately notify him of the Board's intention to use the information contained in State's exhibit 5 against him. Appellant particularly noted the hearing examiner's statements regarding the "serious" and "troubling" nature of the allegations contained in State's exhibit 5 in enhancing the recommended sanction. (Record of Proceedings, Objs. at 2.) Appellant also objected to the hearing examiner's findings of fact and conclusions of law regarding his determination that appellant had the subjective intent to deceive the

Board when responding in the negative to the question asking whether he had been investigated by any employer since signing his last application for renewal. Appellant pointed to his testimony that he read the question to refer to concluded investigations, not ongoing investigations, and answered accordingly. He further noted in his testimony that had the question asked about ongoing investigations directly, he would have disclosed the investigation by FSU.

{¶ 16} At a Board meeting held on August 9, 2023, both appellant and his counsel addressed the Board. The minutes of the Board meeting show that counsel reiterated the legal arguments raised in the objections to the hearing examiner's report and recommendation, particularly noting the content of State's exhibit 5, described by counsel as laying out "salacious and unsubstantiated allegations against Mr. Zedaker which were not the focus of the Notice of Opportunity for Hearing." (Record of Proceedings, Bd. Meeting Minutes at 2.) Counsel requested that if the Board issued any sanctions against appellant, it do so without consideration of any of the evidence included in State's exhibit 5. For his part, appellant stated he did not intend to mislead the Board. He explained that between March 2020 and his December 2021 license renewal application, he was under a great deal of stress due to his significantly increased workload, the suicides of a friend and a student, his hospitalizations for dehydration, exhaustion and heart issues, and the commencement of the FSU investigation. He further explained that he answered the application question at issue as he interpreted it, i.e., he did not report the ongoing FSU investigation because he felt the question was a past-tense question.

{¶ 17} The assistant attorney general also addressed the Board, arguing that the question on the license renewal application asking if appellant had been investigated by his employer was unambiguous. The assistant attorney general further argued that the fact appellant appeared before the FSU investigative panel just a few days before completing the license renewal application established that he lied on the application and evidenced his intent to deceive the Board.

{¶ 18} Without any discussion regarding appellant's case, the Board voted to adopt the hearing examiner's report and recommendation, including the proposed findings of fact, conclusions of law and proposed order included therein. The Board issued its order on August 9, 2023.

{¶ 19}   Appellant timely appealed the Board's order to the common pleas court.  On March 11, 2024, the common pleas court issued a decision and judgment entry affirming the Board's order.  The court concluded that the Board's order "is supported by reliable, probative and substantial evidence and is in accordance with law." (Decision & Jgmt. Entry at 11.)

## II.  Assignments of Error

{¶ 20}  In a timely appeal, appellant advances the following two assignments of error for our review:

> I. The lower court abused its discretion when it determined that the Board's consideration of items outside of the notice did not violate Mr. Zedaker's due process rights and that the order was issued in accordance with law.

> II. The lower court abused its discretion when it determined that the board proved Mr. Zedaker intended to mislead the board and that the order is based on reliable, probative, and substantial evidence and is in accordance with law.

## III.  Discussion

{¶ 21} Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record to determine if the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. *Applegate v. State Med. Bd. of Ohio*, 10th Dist. No. 07AP-78, 2007-Ohio-6384, ¶ 10.  "To be 'reliable,' evidence must be dependable and true within a reasonable probability." *Id.*, citing *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).  "To be 'probative,' evidence must be relevant, or, in other words, tend to prove the issue in question." *Id.*, citing *Our Place* at 571.  "To be 'substantial,' evidence must have importance and value." *Id.*, citing *Our Place* at 571.

{¶ 22} On appeal to this court, however, the standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. *Coleman v. State Med. Bd. of Ohio*, 10th Dist. No. 06AP-1299, 2007-Ohio-5007, ¶ 11, citing *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992).  Rather than appraising the weight of the evidence, an appellate court determines whether the common pleas court abused its discretion as to whether the agency's order is supported by reliable, probative, and substantial evidence. *Id.*, citing *Roy*

*v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680 (10th Dist.1992); *Applegate* at ¶ 11. An abuse of discretion means that the court's attitude is unreasonable, arbitrary, or unconscionable. *Coleman* at ¶ 11, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Absent an abuse of discretion, an appellate court must affirm the common pleas court's judgment, even if the appellate court would have concluded otherwise. *Applegate* at ¶ 11, citing *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988). However, on the question of whether the Board's order is in accordance with law, this court's review is plenary. *Coleman* at ¶ 11, citing *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992).

{¶ 23} For ease of analysis, we will address appellant's assignments of error out of order.

{¶ 24} In his second assignment of error, appellant contends the common pleas court abused its discretion when it determined the Board met its burden of presenting reliable, probative, and substantial evidence sufficient to prove the charges levied against him. Specifically, appellant maintains the Board's evidence did not support the conclusion that he falsely responded to the question at issue on his December 2, 2021 renewal application in an effort to mislead or deceive the Board.

{¶ 25} Pursuant to R.C. 4730.25(B)(8), the Board may discipline a PA for "[m]aking a false, fraudulent, deceptive, or misleading statement * * * in securing or attempting to secure a license to practice as a physician assistant." The statute defines a "false, fraudulent, deceptive, or misleading statement" as one that "includes a misrepresentation of fact, is likely to mislead or deceive because of a failure to disclose material facts, is intended or is likely to create false or unjustified expectations of favorable results, or includes representations or implications that in reasonable probability will cause an ordinarily prudent person to misunderstand or be deceived." R.C. 4730.25(B)(8). In order to discipline a PA under R.C. 4730.25(B)(8), the Board must prove that the PA intended to mislead or deceive the Board. *Menkes v. State Med. Bd.*, 10th Dist. No. 19AP-476, 2020-Ohio-4656, ¶ 34 (construing analogous R.C. 4731.22(B)(5) applicable to physicians); *Accord Applegate* at ¶ 12; *Coleman* at ¶ 12; *Instanbooly v. Ohio State Med. Bd.*, 10th Dist. No. 04AP-76, 2004-Ohio-3696, ¶ 15; *Gipe v. State Med. Bd. of Ohio*, 10th Dist. No. 02AP-

1315, 2003-Ohio-4061, ¶ 64. A licensee's intent to mislead or deceive the Board "may be inferred from the surrounding circumstances, such as when a licensee clearly has information which he fails to disclose in a response to a direct question." *Coleman* at ¶ 12, citing *Webb v. State Med. Bd. of Ohio*, 146 Ohio App.3d 621, 628 (10th Dist.2001). *Accord Applegate* at ¶ 12; *Instabooly* at ¶ 16; *Gipe* at ¶ 64. "Thus, '[d]irect evidence of intent is not necessary because intent may be inferred from the surrounding circumstances.' " *Menkes* at ¶ 37, quoting *Mansour v. State Med. Bd. of Ohio*, 10th Dist. No. 17AP-615, 2018-Ohio-2605, ¶ 19.

{¶ 26} In his renewal application, appellant denied that he had been investigated by any employer since signing his last application for renewal. At the hearing, the Board claimed that FSU's November 5, 2021 letter informing appellant that he was under investigation for alleged workplace sexual misconduct and its subsequent November 29, 2021 interview of appellant regarding those allegations constituted an investigation against him by an employer that appellant should have disclosed. Appellant testified that he both received the letter from FSU and was interviewed by FSU investigators prior to completing the renewal application. However, he claimed he interpreted the term "investigated" as meaning an investigation that had reached a conclusion, and because the FSU investigation was still ongoing at the time he submitted his renewal application, he answered the question truthfully and thus did not intend to mislead or deceive the Board.

{¶ 27} The hearing examiner's report and recommendation sets forth a detailed and exhaustive account of the evidence presented at the hearing, including appellant's testimony as to his interpretation of the term "investigated" and his explanation for not disclosing the FSU investigation. The hearing examiner found appellant's testimony and explanation "simply not credible" and "incredulous." (Record of Proceedings, Report & Recommendation at 12.) In so determining, the hearing examiner noted appellant's "demeanor when testifying" and his "troubling" insistence that his interpretation was justified. (Record of Proceedings, Report & Recommendation at 12.) Finding appellant's explanation not credible, the hearing examiner concluded appellant intended to mislead the Board when answering no to the question on the renewal application. Appellant reiterated his explanation at the Board hearing, stating he answered the question as he

interpreted it, i.e., that the term investigated connoted a concluded investigation; as such, he did not intend to deceive the Board in failing to report the ongoing FSU investigation.

{¶ 28} Essentially, appellant contends the hearing examiner and the Board should have believed the explanation he provided regarding his answer to the question on the renewal application. However, "[t]he board is under no obligation to believe [a licensee's] testimony den[ying] any intent to deceive." (Internal quotations and citation omitted.) *Menkes* at ¶ 37, quoting *Mansour v. State Med. Bd. of Ohio*, 10th Dist. No. 07AP-78, 2007-Ohio-6384, ¶ 25. *See also Bhama v. State Med. Bd. of Ohio*, 10th Dist. No. 08AP-488, 2009-Ohio-819, ¶ 34 ("The board is not bound to accept a version of the facts that it does not find credible where there is other evidence in the record to the contrary."). Here, appellant requests that we resolve factual conflicts in his favor, rehashing the same arguments he presented both to the Board and the common pleas court. However, "[a]n appellate court cannot second guess the Board's credibility determinations." *Applegate* at ¶ 21, citing *Hoxie v. Ohio State Med. Bd.*, 10th Dist. No. 05AP-681, 2006-Ohio-646, ¶ 32. Moreover, even if this court were inclined to assess appellant's credibility, we cannot find fault with the Board's rejection of appellant's explanation for answering as he did. As the hearing examiner noted, the question at issue called for appellant's disclosure of any investigation conducted by his employer at any time after he signed his last application for renewal. The question at issue is direct and straightforward and thus not subject to interpretation by appellant. The renewal application made no provision for permitting appellant to determine for himself the nature or scope of the information sought by the Board with regard to investigations conducted by his employer. *See Bhama* at ¶ 34.

{¶ 29} Upon review of the record, we find that the evidence before the Board demonstrates that when appellant completed the December 2, 2021 license renewal application, he knew that he had been investigated by his employer for workplace infractions since filing his last license renewal application. Nevertheless, he answered "no" to a clear, unambiguous question that sought to ascertain that very information. Given this reliable, probative, and substantial evidence, we conclude the common pleas court did not abuse its discretion in finding that appellant intended to mislead or deceive the Board when completing his December 2, 2021 license renewal application.

{¶ 30} Appellant's second assignment of error is overruled.

{¶ 31} In his first assignment of error, appellant contends the common pleas court abused its discretion in determining that the Board did not violate his right to due process when it disciplined him for uncharged misconduct.

{¶ 32} Both the Fourteenth Amendment to the United States Constitution and Article I, Section 16, of the Ohio Constitution require that administrative proceedings comport with due process. *Macheret v. State Med. Bd. of Ohio*, 188 Ohio App.3d 469, 2010-Ohio-3483, ¶ 24 (10th Dist.), citing *Mathews v. Eldridge*, 424 U.S. 319 (1976). "Procedural due process requires administrative agencies to provide an individual with fair notice of the precise nature of the charges that the agency will pursue at a disciplinary hearing." *Id.*, citing *Applegate* at ¶ 23. "[T]he board's notice is constitutionally sufficient where the notice includes (1) the allegation against [the licensee], (2) the statute directly involved, and (3) the reasons for the board's proposed action." *Froehlich v. Ohio State Med. Bd.*, 10th Dist. No. 15AP-666, 2016-Ohio-1035, ¶ 30, citing *Gross v. Ohio State Med. Bd.*, 10th Dist. No. 08AP-437, 2008-Ohio-6826, ¶ 24. "The question of whether due process requirements have been satisfied presents a legal question we review de novo." *Seman v State Med. Bd. of Ohio*, 10th Dist. No. 19AP-613, 2020-Ohio-3342, ¶ 20, citing *Flynn v. State Med. Bd. of Ohio*, 10th Dist. No. 16AP-29, 2016-Ohio-5903, ¶ 46. A licensee must demonstrate that any violation of due process resulted in prejudice. *Id.* at ¶ 21, citing *Griffin v. State Med. Bd. of Ohio*, 10th Dist. No. 11AP-174, 2011-Ohio-6089, ¶ 26.

{¶ 33} Appellant asserts that his due process rights were violated because the April 13, 2022 notice failed to inform him that the Board intended to discipline him for the alleged workplace sexual misconduct that motivated FSU to open an investigation against him. Appellant contends that the Board's notice included only a single allegation against him, i.e., that despite being required to do so, he did not disclose the FSU investigation on his renewal application. Appellant maintains that such was the only allegation he was prepared to discuss and defend at the administrative hearing. Appellant contends that the admission of State's exhibit 5, the FSU investigative file, demonstrates that the Board utilized the "salacious, prejudicial, allegations against Mr. Zedaker" contained in that exhibit to deny his renewal application. (Appellant's Brief at 9.)

{¶ 34} The hearing examiner consistently stated at the administrative hearing, in his report and recommendation, and in the errata thereto that State's exhibit 5 was admitted

only for purposes of establishing a timeline of events related to the FSU investigation, i.e., when appellant was notified of the investigation and when he was interviewed by FSU investigators. Further, in his report and recommendation and again in the errata thereto, the hearing examiner expressly stated that he did not consider the findings of the FSU investigation in the determination of whether appellant violated R.C. 4730.25(B)(8). As such, appellant's due process rights were not violated because appellant was not disciplined for the disputed misconduct at FSU. *See Applegate* at ¶ 23. At most, the hearing examiner simply viewed the disputed misconduct as further indication of appellant's willingness to lie to protect his own self-interest. *Id.*

{¶ 35} Moreover, this court has consistently found that the Board may consider aggravating circumstances, including uncharged misconduct, during the administrative hearing. *Seman* at ¶ 24, quoting *Macheret* at ¶ 28 (" '[i]n setting the appropriate sanction for the violations alleged and proven, the Board may, as it did, take into account aggravating circumstances, including uncharged conduct.' ") *Accord Froehlich* at ¶ 31 (medical review board may consider aggravating circumstances, including uncharged conduct, in considering appropriate sanction). In his report and recommendation and errata thereto, the hearing examiner expressly stated that he considered the uncharged misconduct only in determining the appropriate sanction for the violation alleged and proven.

{¶ 36} At oral argument, appellant for the first time argued that the Board's requirement that appellant complete courses related to professional ethics and workplace boundaries as part of the sanction violates this court's holding in *In re Eastway*, 95 Ohio App.3d 516 (10th Dist.1994), because that condition of probation is not supported by reliable, probative, and substantial evidence. Appellant's briefing reveals no reference to *Eastway*. An appellate court will generally not consider an argument raised for the first time at oral argument when a party had an opportunity to raise the issue in its brief. *State v. Clay*, 10th Dist. No. 21AP-566, 2022-Ohio-2878, ¶ 18, citing *Mun. Tax. Invest. L.L.C. v. Northup Reinhardt Corp.*, 10th Dist. No. 19AP-26, 2019-Ohio-4867, ¶ 32, citing *Serra v. Serra*, 10th Dist. No. 15AP-528, 2016-Ohio-950, ¶ 16.

{¶ 37} Appellant's first assignment of error is overruled.

## IV. Conclusion

{¶ 38} Having overruled appellant's two assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL, P.J., and EDELSTEIN, J., concur.

———————