OPINION
{¶ 1} Appellant, Savitri Bhama, M.D., appeals from the judgment of the Franklin County Court of Common Pleas affirming the order of appellee, State Medical Board of Ohio ("board"), permanently denying appellant's application to practice medicine and surgery in Ohio. For the reasons that follow, we affirm.
 {¶ 2} By letter dated March 14, 2007, the board notified appellant that it proposed to deny her application for a certificate to practice medicine and surgery in Ohio. The board's proposed action was based upon the allegation that appellant failed to truthfully answer the application question related to resignations and terminations from private or *Page 2 
public medical practices. In particular, the board alleged that appellant failed to disclose that she had resigned from five positions and had been terminated from two positions during the course of her medical career. The board asserted that appellant's "acts, conduct, and/or omissions" constituted, in pertinent part, "[m]aking a false, fraudulent, deceptive, or misleading statement * * * in securing or attempting to secure any certificate to practice" in violation of R.C. 4731.22(B)(5). (State's Exhibit 1A.) The board further alleged that appellant falsely certified that the information she provided in the application was truthful and accurate. The board asserted that appellant's "acts, conduct, and/or omissions * * * constitute `violating or attempting to violate, directly or indirectly, or assisting in or abetting the violation of, or conspiring to violate, any provisions of this chapter or any rule promulgated by the board,' as that clause is used in Section 4231.22(B)(20), Ohio Revised Code, to wit: a failure to furnish satisfactory proof of good moral character as required by Sections 4731.29 and 4731.08, Ohio Revised Code." Id.
 {¶ 3} Appellant requested an administrative hearing pursuant to Ohio Adm. Code 4731-13. The matter came before a board-appointed hearing examiner on September 4, 2007. In a report and recommendation filed September 28, 2007, the hearing examiner recommended permanent denial of appellant's application for licensure. After appellant filed objections, the board convened to consider the matter. Following discussion, the board, on November 14, 2007, entered an order adopting the hearing examiner's findings of fact and conclusions of law, thus permanently denying appellant's application for licensure.
 {¶ 4} Appellant appealed the board's order to the common pleas court pursuant to R.C. 119.12. By decision and entry filed May 7, 2008, the court affirmed the board's *Page 3 
order. Appellant timely appealed to this court and advances the following two assignments of error:
 [I.] THE TRIAL COURT'S DECISION IS IN ERROR BECAUSE THE BOARD'S ORDER IS CONTRARY TO LAW AND NOT SUPPORTED BY SUBSTANTIAL, RELIABLE, AND PROBATIVE EVIDENCE AS THE RECORD DOES NOT SUPPORT A FINDING OF INTENT TO DECEIVE AND MISLEAD.
 [II] THE TRIAL COURT'S DECISION IS IN ERROR BECAUSE THE BOARD'S ORDER IS CONTRARY TO LAW AND NOT SUPPORTED BY SUBSTANTIAL, RELIABLE, AND PROBATIVE EVIDENCE AS DR. BHAMA WAS NOT TERMINATED FROM THE CLINTON VALLEY CENTER AND IT WAS NOT AN INTENTIONAL FAILURE TO DISCLOSE.
 {¶ 5} Documentary evidence and witness testimony provided at the administrative hearing generally established the following facts. Appellant was born in the former West Pakistan in 1934. She received her medical degree from Grant Medical College, University of Mumbai, Bombay, India, in the early 1960's. She completed a psychiatry residency program in the United States in the mid-1960's. As of the hearing date, appellant held active medical licenses in Michigan and Kentucky; her medical license in Washington had expired.
 {¶ 6} On June 17, 2005, appellant filed an application for a certificate to practice medicine and surgery in Ohio. At the time, appellant was working in Kentucky and lived in Michigan; she sought an Ohio medical license to take advantage of employment opportunities in this state. Appellant testified that her brother initially completed the application for her; however, she admitted that she reviewed the application, made corrections to it, signed it, and submitted it to the board. *Page 4 
 {¶ 7} In the section entitled "Resume of Activities," appellant chronicled her employment history, noting the entities that employed her, the dates she was employed, and the positions she held. As pertinent here, appellant stated that she was employed from July 1966 to June 1968 as a staff psychiatrist at Ypsilanti State Hospital ("Ypsilanti") in Ypsilanti, Michigan; from July 1968 to July 1970 as a supervisory psychiatrist at Malcolm Bliss Mental Health Center ("Malcolm Bliss") in St. Louis, Missouri; from August 1973 to August 1974 as a senior staff psychiatrist at Veterans Administration Hospital in Allen Park, Michigan ("Allen Park"); from August 1974 to January 1977 as a senior staff psychiatrist at the Detroit Psychiatric Institute ("Detroit Psychiatric") in Detroit, Michigan; from October 1977 to August 1991 as a staff psychiatrist at the Clinton Valley Center ("Clinton Valley") in Pontiac, Michigan; from September 1991 to August 1996 as a staff psychiatrist for the Michigan Bureau of Forensic Mental Health Services at the Western Wayne Correctional Facility in Plymouth, Michigan ("Michigan Bureau"); and from December 2004 to "current" as a staff psychiatrist at the Penny Royal Center at the Western State Hospital ("Penny Royal") in Hopkinsville, Kentucky. (State's Exhibits 6, 8-12.) The "Resume of Activities" made no provision for, nor did appellant provide, an explanation for her leaving any of these positions.
 {¶ 8} The application also included a section entitled "Additional Information," which required appellant to answer "Yes" or "No" to 25 separate questions. (State's Exhibit 6, at 24-27.) The instructions provided, as follows: "If you answer `YES' to any of the following questions, you are required to furnish complete details, including date, place, reason and disposition of the matter. All affirmative answers must be thoroughly explained on a separate sheet of paper. You must submit copies of all relevant *Page 5 
documentation, such as court pleadings, court or agency orders, and institutional correspondence and orders. Please note that some questions require very specific and detailed information. Make sure all responses are complete." (Emphasis sic.) (State's Exhibit 6, at 24.) Appellant testified that she read these instructions.
 {¶ 9} Appellant answered "No" in response to question three, which asked: "Have you ever resigned from, withdrawn from, or terminated, or have you ever been requested to resign from, withdraw from, or otherwise been terminated from, a position with a medical partnership, professional association, corporation, health maintenance organization, or other medical practice organization, either private or public?" Id. In addition, appellant signed an "Affidavit and Release of Applicant," whereby she acknowledged, in pertinent part, that "all statements that I have or shall make with respect thereto are true" and that "issuance of a certificate to practice medicine * * * will be considered based on the truth of the statements and documents contained herein or to be furnished, which if false, can subject me to denial of said certificate." Id. at 32.
 {¶ 10} On August 22, 2005, appellant filed an updated "Resume of Activities" to comply with the board's request for additional information. In the update, appellant noted that her employment with Penny Royal ended on June 30, 2005.
 {¶ 11} In a letter dated July 24, 2005, appellant notified the board that she had requested the Federation Credentials Verification Service ("FCVS") to obtain information about her medical credentials and forward it to the board. Appellant testified that she believed FCVS would provide the board with a detailed chronology of her medical training and employment history. Appellant updated the board on the status of the FCVS *Page 6 
credentialing process via letters dated October 14, 2005, February 6, 2006, [1] and May 3, 2006. (State's Exhibit 6, at 57, 58, 59, respectively.) Appellant also provided the board with her curriculum vitae ("CV"), which included her employment history. Appellant did not include any information in her CV as to whether she ever resigned from or was terminated from employment. (State's Exhibit 60; Respondent's Exhibit A.)
 {¶ 12} At the hearing, appellant testified that she resigned from her positions at Ypsilanti, Malcolm Bliss, Allen Park, Detroit Psychiatric, and Penny Royal. She further testified that she was terminated from her position at Clinton Valley in 1984 after her request for additional sick leave was denied and she thereafter failed to return to work; following a protracted legal challenge, Clinton Valley reinstated her in 1989. Appellant acknowledged that she did not practice medicine and was otherwise unemployed during the five-year period between the termination and the reinstatement. Although she was not awarded back pay, she did receive employment credit for that period.
 {¶ 13} Appellant also testified that she was terminated from her position with the Michigan Bureau on March 28, 1996. According to appellant, the termination resulted from her dispute with administrators regarding changes in the decision-making process regarding patient care. Her legal challenge to that termination remained unresolved as of the date of the hearing.
 {¶ 14} Appellant admitted that her response to the application question regarding resignations and terminations was "literally speaking * * * incorrect." (Tr. 92.) Regarding the resignations, she explained that she "thought * * * it was implied that I would resign from one place to go to another place, either resign or terminate to go from one place to *Page 7 
another." (Tr. 49.) Upon further questioning, appellant acknowledged that the question unambiguously asked whether she had ever resigned from employment. Despite this acknowledgement, appellant reiterated that she "thought it was implied that you either resign or leave before you move on to another place." Id.
 {¶ 15} Regarding the terminations, appellant explained that she "figured * * * the * * * board is going to write to every place that I have worked, and they will know what happened in every job location. * * * The [b]oard will know that I was terminated from there." (Tr. 52.) When asked, "[w]ouldn't the Board definitely know you were terminated if you actually told them so, Doctor, by answering yes," appellant responded, "I just presumed that it is implied that the person would either resigned [sic] or was terminated." Id.
 {¶ 16} When questioned if she understood why the board might have an interest in ascertaining why a physician resigned or was terminated from employment, appellant responded: "The Board would be interested if there was some cause why the person resigned or left. They would be interested in some genuine cause where a person's professional competence was in question. That's how I read it. They are after really the clinical care and concern for the patient that the doctor has or has shown. * * * So if there is a cause, they have reason to know." (Tr. 53-54.)
 {¶ 17} Appellant acknowledged that question three was not strictly limited to resignations and terminations for cause; however, she reiterated her position that she did not believe the board was interested in standard resignations unrelated to cause and that the board would uncover the reasons for her terminations upon inquiry of the terminating employers. Appellant further stated that she believed the board was only interested in *Page 8 
resignations or terminations involving issues such as "patient care * * * or doctor's medical or psychiatric problems interfering with patient care like drugs, doctors who get involved with undue familiarity or sexual misconduct * * * gross and significant moral unethical character for those issues." (Tr. 56.) Appellant admitted that the Michigan Bureau termination was related to patient care. When asked why she did not err on the side of caution and provide the information, appellant responded, "I should have. I should have done that. * * * It was just the trouble of * * * going through that." (Tr. 65.) Appellant further testified that her intention was "to provide [the board] all the information they need to be able to make a fair judgment that I provided adequate professional services to my patients in a * * * highly moral and ethical manner with the greatest concern for * * * the patient's health." (Tr. 92.) She also testified that "in the future I will make every attempt to answer every question literally the way they ask." (Tr. 69.)
 {¶ 18} In her report and recommendation, the hearing examiner issued findings of fact and conclusions of law and recommended the permanent denial of appellant's application. The hearing examiner concluded that appellant's answers on her application constituted "[m]aking a false, fraudulent, deceptive, or misleading statement * * * in securing or attempting to secure any certificate to practice * * * issued by the board" in violation of R.C. 4131.22(B)(5) and a "failure to furnish satisfactory proof of good moral character" pursuant to R.C. 4731.08 and4731.29 in violation of R.C. 4731.22(B)(20). (Report and Recommendation, at 9.) In reaching her conclusions, the hearing examiner reasoned as follows:
 The evidence establishes that Dr. Bhama clearly failed to disclose multiple resignations and terminations in response to the Board's direct question and the surrounding circumstances support a conclusion that Dr. Bhama intended *Page 9 
to mislead or deceive the Board when she falsely answered question three.
 * * *
 Dr. Bhama chose not to admit or explain any of her multiple resignations and terminations when asked in a very direct, straightforward manner in the application. Her explanation at the hearing that the resignations and terminations are implied from the fact that she changed employers on many occasions throughout her career is not credible or accepted as a valid excuse for falsely answering question three. Even if the information that she disclosed in the application implicitly demonstrated that she had resigned, had withdrawn, or was terminated from position[s] during her lengthy employment history, Dr. Bhama nevertheless had a duty to answer question three honestly. Additionally, the fact that Dr. Bhama was reinstated to her position at Clinton Valley Center is irrelevant to a reasonable, honest answer to question three. Finally, even if question three were limited to resignations, withdrawals, or terminations due to patient care, Dr. Bhama should have answered the question affirmatively because she was terminated in 1996 as a result of a disagreement over patient care policies. Dr. Bhama admitted such during the hearing in this matter. * * *
(Report and Recommendation, at 9-10.)
 {¶ 19} The board convened to discuss the report and recommendation and appellant's objections thereto in an open meeting attended by appellant with counsel. The minutes from that meeting indicate that appellant's counsel noted that appellant had practiced for several decades without incident and had no previous disciplinary actions. Counsel argued that appellant merely misunderstood the type and nature of information sought by the board and did not intentionally deceive or mislead the board in answering "No" to question three.
 {¶ 20} Appellant addressed the board on her own behalf. Appellant stated that during the time she was preparing the application, she was exhausted because she was *Page 10 
working almost 80 hours per week. Her brother, who typed the application, pushed her to sign it. During a quick perusal, she noticed a question regarding whether she had ever been a defendant in a medical malpractice action. Believing that issue to be important to the board, she answered the question in the affirmative and submitted copies of relevant documentation explaining the surrounding circumstances.
 {¶ 21} As to her employment history, appellant stated that she believed resignations were implied by the fact that she had frequently changed jobs during her career. She thought the board would not be interested in job changes made only to obtain a higher salary or a position of greater authority. Appellant further stated that she thought the board would not be interested in her separation from Clinton Valley, as it did not involve misconduct, professional incompetence, or alcohol or drug addiction. As to her termination from the Michigan Bureau, appellant explained that it resulted from her disagreement with administrative policies regarding patient care. She also commented that stating the reasons for the resignations and terminations would necessitate her brother retyping the entire application, and she did not want to burden him with that task.
 {¶ 22} Appellant noted that she had provided the board with her CV, which included her entire employment history, and provided the same information to the FCVS. She stated that she did not intentionally hide any information from the board. Appellant apologized for her actions and volunteered her services to assist the board in improving the quality of patient care in Ohio.
 {¶ 23} During the board's discussion, one board member stated that appellant's determination as to what information the board sought was inappropriate, as appellant needed only to read the application to understand what information the board considered *Page 11 
to be important. This board member further averred that appellant should have affirmatively answered the question and explained to the board the reasons for the resignations and terminations. The board member found appellant's failure to do so particularly egregious in regard to the terminations, as she had been terminated from two different practices. Another board member stated that appellant's rationale for excluding the resignations did not explain her failure to disclose the terminations; accordingly, appellant clearly did not want the board to know any of the circumstances related to her medical career. A third board member noted that the board is responsible for ascertaining all issues regarding a physician's medical career, not just those related to patient care. This board member also averred that it was clear appellant intended to hide certain aspects of her employment history from the board. At the conclusion of the discussion, the board voted six to zero, with one abstention, to approve the hearing examiner's report and recommendation and permanently deny appellant's application for licensure.
 {¶ 24} On appeal, the common pleas court determined that the board's order was supported by reliable, probative and substantial evidence and was in accordance with law. On appeal to this court, appellant argues that the common pleas court abused its discretion in so finding. As appellant's assignments of error are interrelated, we shall consider them together.
 {¶ 25} At the outset, we note the applicable standards for reviewing an appeal from the board's denial of a licensure application. A common pleas court must uphold the order if it is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C. 119.12; Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. "To be `reliable,' evidence must be dependable and true within a reasonable *Page 12 
probability." Applegate v. State Med. Bd. of Ohio, Franklin App. No. 07AP-78, 2007-Ohio-6384, at ¶ 10, citing Our Place, Inc. v. Ohio LiquorControl Comm. (1992), 63 Ohio St.3d 570, 571. "To be `probative,' evidence must be relevant, or, in other words, tend to prove the issue in question." Id. "To be `substantial,' evidence must have importance and value." Id.
 {¶ 26} Generally, a common pleas court should defer to the board's resolution of evidentiary conflicts. General Motors Corp. v. Joe O'BrienChevrolet, Inc. (1997), 118 Ohio App.3d 470, 482. Thus, as long as there is reliable, probative, and substantial evidence to support the board's findings, a common pleas court may not substitute its judgment for that of the board on disputed facts. Id. Whether any evidence supports the board's decision is a question of law. Id. at 483.
 {¶ 27} An appellate court's review is even more limited than that of the common pleas court. Pons, supra. "The appellate court is to determine only if the trial court has abused its discretion,i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." Id. At 621. Absent an abuse of discretion, this court may not substitute its judgment for that of the board or common pleas court. Id. The fact that an appellate court might arrive at a different conclusion than the board or common pleas court is immaterial to appellate review. Krain v. StateMed. Bd. of Ohio (Oct. 29, 1998), Franklin App. No. 97APE08-981. Further, when reviewing the board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession. Pons, supra.
 {¶ 28} Appellant first contends the common pleas court abused its discretion in affirming the board's order, as the board's finding that appellant violated *Page 13 
R.C. 4731.22(B)(5) is not supported by reliable, probative, and substantial evidence. In particular, appellant contends the record does not establish that appellant intended to deceive and mislead the board when she failed to disclose on the application for licensure that she had resigned from five positions and had been terminated from two positions during her medical care. We disagree.
 {¶ 29} As pertinent here, R.C. 4731.22(B)(5) proscribes "[m]aking a false, fraudulent, deceptive, or misleading statement * * * in securing or attempting to secure any certificate to practice * * * issued by the board." The statute defines a "false, fraudulent, deceptive or misleading statement" as one "that includes a misrepresentation of fact, is likely to mislead or deceive because of a failure to disclose material facts, is intended or is likely to create false or unjustified expectations of favorable results, or includes representations or implications that in reasonable probability will cause an ordinarily prudent person to misunderstand or be deceived."
 {¶ 30} In In re Wolfe (1992), 82 Ohio App.3d 187, this court determined that evidence of intent to mislead is necessary to prove a violation of R.C. 4731.22(A).[2] In Rajan v. State Med. Bd. ofOhio (1997), 118 Ohio App.3d 187, we extended the same burden of proof to alleged violations of R.C. 4731.22(B)(5.) Thus, in order to deny appellant a medical license for violating R.C. 4731.22(B)(5), the board was required to find that appellant intentionally misled the board in failing to disclose that she had resigned from or was terminated from several positions of employment during her medical career. Intent "may be inferred from the surrounding circumstances, e.g., as when a *Page 14 
licensee clearly knows something, which he failed to disclose in response to a direct question." Hayes v. State Med. Bd. of Ohio (2000),138 Ohio App.3d 762, 770, citing Krain, supra.
 {¶ 31} Appellant concedes that she failed to disclose the resignations and terminations in response to question three. She contends, however, that contrary to the board's findings, the "surrounding circumstances" actually support a conclusion that she did not intend to mislead or deceive the board in doing so. Appellant avers the board relied solely on the fact that she falsely answered question three and failed to consider evidence establishing that she did not intend to deceive or mislead the board by failing to disclose the resignations and terminations. In particular, appellant notes that she has practiced medicine for several decades without incident and has had no disciplinary actions. She also points to her voluminous application, which included two resumes and a CV chronicling her lengthy medical career, her repeated and extensive communications with the board during the application process, and her execution of authorizations permitting the board and FCVS to obtain any and all information related to her medical career, as evidence that she harbored no intent to deceive or mislead the board. Appellant contends that her actions in this regard are inconsistent with those of a person attempting to hide information from the board. Appellant argues that if she truly intended to mislead the board or conceal the fact that she had resigned or been terminated from employment, she would not have disclosed her entire employment history nor signed authorizations permitting the board to obtain information from all her past employers.
 {¶ 32} In addition, appellant points to her testimony explaining why she did not disclose the resignations and terminations as further evidence that she did not intend to *Page 15 
deceive or mislead the board. In particular, appellant notes her testimony that she believed that resignations were implied from the fact that she changed employers multiple times throughout her medical career. As to the terminations, appellant directs us to her testimony that she merely misunderstood question three, errantly reading a "cause" element into the question because she understood the board to be seeking only information related to misconduct or professional incompetence regarding patient care. Appellant also notes her testimony that she did not believe she was required to disclose the Clinton Valley termination because that action had been reversed and she had been reinstated to her position. In addition, appellant notes her testimony that she believed the board would obtain a complete employment history, including resignations and terminations, either through its own investigative efforts or the FCVS credentialing process.
 {¶ 33} The record establishes that the hearing examiner and the board considered the foregoing evidence. In her report and recommendation, the hearing examiner expressly stated that she had "thoroughly reviewed and considered" "[a]ll exhibits and the transcripts of testimony, even if not specifically mentioned," prior to rendering her decision. (Report and Recommendation, at 2.) Further, the hearing examiner set forth a detailed and exhaustive account of the evidence presented at the hearing, including appellant's reasons for not disclosing the resignations and terminations. Appellant referenced the evidence in her objections to the hearing examiner's report and recommendation. The board's minutes indicate that each board member had received, read, and considered the hearing record, the hearing examiner's report and recommendation, and appellant's objections thereto. *Page 16 
 {¶ 34} The hearing examiner and the board simply found appellant's testimony and rationalizations to be implausible. Indeed, the hearing examiner and board members expressly stated as much. The board is not bound to accept a version of the facts that it does not find credible where there is other evidence in the record to the contrary. In this appeal, appellant requests that we resolve factual conflicts favorably to her, rehashing the same arguments about credibility that she presented both to the board and the common pleas court. However, an appellate court may not second guess the board's credibility determinations. Applegate, supra, at ¶ 21. Moreover, even if we were inclined to assess appellant's credibility, we find no fault with the board's rejection of appellant's explanation. As the hearing examiner and the board noted, question three is direct and straightforward and, thus, not subject to interpretation by appellant. The application made no provision for permitting appellant to determine for herself the nature or scope of information sought by the board with regard to resignations and terminations. As noted by one board member, appellant should simply have answered question three in the affirmative and provided a written explanation for the resignations and terminations as required by the application. Further, even if the board were to accept appellant's rationale that she believed she was required to assert an affirmative response to question three only if the termination or resignation related to patient care, she still answered it falsely, as she admitted that she was terminated from the Michigan Bureau as a result of disputes over administrative policies related to patient care.
 {¶ 35} Appellant also argues that the common pleas court abused its discretion in affirming the board's order, as the board's finding that she was terminated from Clinton Valley is not supported by reliable, probative, and substantial evidence. More particularly, *Page 17 
appellant contends that, because the termination was reversed and she was reinstated to her position, she was not actually "terminated" and was, therefore, not required to disclose it; accordingly, she could not have intended to mislead the board in not reporting it. Appellant asserted this argument at the hearing, and the hearing examiner found it incredible; the board agreed. The application question is straightforward and direct; it asks whether appellant had ever been terminated from any position. Appellant clearly knew that she had been terminated from Clinton Valley and failed to disclose that information in response to a direct question. See Instanbooly v. Ohio State Med.Bd., Franklin App. No. 04AP-76, 2004-Ohio-3696. As noted by the hearing examiner, the fact that appellant was reinstated to the position five years after the termination is irrelevant to a reasonable, honest answer to the question. The question made no provision for allowing the non-disclosure of terminations which had subsequently been reversed.
 {¶ 36} Further, appellant's application did not account for the fact that she did not practice medicine for the five years between the termination and the reinstatement. As noted by appellee, in this age of rapid and significant medical advances, a five-year absence from medical practice could negatively affect a physician's ability to conform to prevailing standards of care. Accordingly, it is imperative that the board know if an applicant has not practiced medicine for an extended period of time. Moreover, it is not the board's responsibility to discover information upon its own investigation after an applicant has failed to truthfully respond to the board's question. Rather, the onus is on the applicant to fully and candidly disclose all information related to the applicant's employment history. Given these circumstances, the common pleas court did not abuse its discretion in finding that reliable, probative, and substantial evidence supports the *Page 18 
board's determination that appellant intended to mislead or deceive the board in failing to disclose the termination from Clinton Valley.
 {¶ 37} In this case, reliable, probative, and substantial evidence supports the board's finding that appellant provided false information on her application with an intent to deceive or mislead when she completely failed to disclose to the board, when required to do so, that she had resigned from five positions and had been terminated from two positions during her medical career. Accordingly, we conclude that the common pleas court did not abuse its discretion in upholding the board's determination that appellant violated R.C. 4731.22(B)(5).[3]
Accordingly, we overrule appellant's first and second assignments of error.
 {¶ 38} Having overruled appellant's two assignments of error, this court hereby affirms the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
McGRATH and TYACK, JJ., concur.
T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Appellant acknowledged that the letter is incorrectly dated December 6, 2006.
[2] R.C. 4731.22(A) provides, in pertinent part, that the board "may refuse to grant a certificate to a person found by the board * * * to have committed fraud, misrepresentation, or deception in applying for or securing any certificate to practice[.]"
[3] Although appellant raises no argument regarding this issue, we find that appellant's failure to truthfully complete the application constitutes a violation of R.C. 4731.22(B)(20), to wit: a failure to furnish satisfactory proof of good moral character as required for licensure under R.C. 4731.08 and 4731.29. *Page 1